# CHARLESTON.

### ROBERTS *v.* MARTIN *et al.*

Submitted September 12, 1911. Decided February 25, 1913.

1. WATERS AND WATER COURSES—*Natural Water Course—Diversion.*

    A diversion of a natural watercourse, though without actual damage to a lower riparian owner, is an infringement of a legal right and imports damage. (p. 94).

2. SAME—*Riparian Rights—Nature and Extent.*

    The right of a riparian proprietor to have the water of the stream pass his land in its natural flow is a right annexed to the soil and exists as parcel of the land. (p. 94).

3. SAME.

    The right of a riparian owner to the natural flow of the stream is not dependent upon its value to him or the use which he makes of it. (p. 95).

4. SAME.

The right of a lower riparian owner to the natural flow of the stream is subject only to a reasonable use of the water by the upper riparian owners as it runs through their lands before reaching his. (p. 95).

5. SAME.

No legal right exists in a riparian owner to divert water of the stream for use beyond his riparian land, and any such diversion and use is an infringement of the rights of lower riparian proprietors who are thereby deprived of the flow. (p. 96).

6. SAME.

If the diversion of water from riparian land for use elsewhere is not so inconsiderable, when the amount diverted is viewed relatively with the stream at its lowest stage as to be excluded under the maxim *de minimis non curat lex,* a lower riparian owner may have redress against the diversion. (p. 98).

7. SAME—*Natural Water Course—Diversion.*

A stream begins at its source, when it comes to the surface, and a diversion of it at the spring head is just as much a diversion as if the water had been taken lower down. (p. 99).

8. SAME.

Equity has jurisdiction to vindicate the right of a riparian owner to the natural flow of the stream by restraining an unlawful diversion of the water from its natural course. (p. 99).

Appeal from Circuit Court, Mineral County.

Suit in equity by A. P. Roberts against Joseph Martin and others. From a decree for defendants, plaintiff appeals.

*Reversed and Decree Here.*

*W. H. Griffith,* for appellant.

*Frank C. Reynolds,* for appellees.

ROBINSON, JUDGE:

A small stream flows through the land of plaintiff, power from which is utilized by him in the operation of an old style grist mill. The source of the stream is in certain springs on a tract of land owned by another, immediately above plaintiff's land. Defendants purchased from the owner of this upper tract the right to one of the springs. From this spring they have

conducted water by a small pipe line, around the land of plaintiff, to the store and dwellings on their own premises below the mill.    Here the water from the pipe line supplies certain domestic and other wants of defendants.    It is then turned into a watering trough at the road side, from which it is allowed to find its way again to the stream below plaintiff's mill.

By this suit plaintiff sought to enjoin the diversion of the water from the stream.    Upon a hearing of the cause on the bill, answers, and depositions, the relief prayed for was denied, though right to sue at law was reserved to plaintiff.

Only a small quantity of water is taken from the stream.    But viewed relatively with the size and general character of the stream, the quantity diverted therefrom is perceptible and material.

That such a diversion is unlawful and will be enjoined by a court of equity is beyond doubt.    It may be that plaintiff is not actually damaged in the operation of his mill by the diversion. He is damaged by the infringement of a right.    That right a court of equity will preserve to plaintiff.    In an early case, in which the learned opinion was written by Mr. Justice Story, it was held: "Actual perceptible damage is not indispensable as the foundation of an action.    It is sufficient to shew a violation of a right.    The law will presume some damage in such a case. *A fortiori,* where the act done is such, that, by its repetition or continuance, it may become the foundation or evidence of an adverse right.    A party may recover at law nominal damages for a diversion of a watercourse, where no actual damage has occurred, as a means of establishing and protecting his right.    *A fortiori,* he may assert his right in Equity, by a writ of injunction."    *Webb* v. *Portland Manufacturing Co.,* 3 Sumn. 189. A recognized authority says: "That a diversion of a watercourse, without actual injury to a riparian owner lower down the stream, legally imports damage (because it is an infringement of right), is a doctrine powerfully sustained by American authorities." Angell on Watercourses (7th ed.), sec. 135.

Plaintiff, whether he has a mill or not, and regardless of the fact that the mill has been operated on the stream for many years, is entitled as a riparian owner to have the stream which washes his land flow as it is wont by nature without diminution

or alteration. He may insist that the stream shall flow to his land in the usual quantity, in its natural place and at its natural height, and that it shall flow off the land to his neighbor below in its accustomed place and at its usual level. While he has no property in the water itself, yet his right to the natural flow of the water will be regarded and protected as property. His right to have the water pass his land in its natural current is not an easement or appurtenance; but it is a right annexed to the soil which he owns. The right exists *jure naturae* as parcel of the land. Gould on Waters (3rd ed.), sec. 204; Pomeroy on Riparian Rights, secs. 7-9. The flow of the water in its natural way and at its natural height is a part of plaintiff's landed estate. Interference with the flow is the infringement of a property right of plaintiff for which he may have redress as readily as for violation of his right to any other portion of the soil.

Defendants, by their act in taking the water, are clearly infringing the right of plaintiff as a riparian owner. They are disturbing the natural flow of the stream to which he is entitled, by reducing the quantity of water that would naturally flow therein. Their act is an unlawful one. It does not matter whether plaintiff is actually damaged. Nor does it matter that plaintiff does not need the water for use. Their act interferes with plaintiff's right—the full enjoyment of his property without molestation. And, using the language of a Pennsylvania case, relating to such a right, "the wrong must cease, no matter how trifling it may seem. The right of the plaintiff is absolute to be restored to the full enjoyment of his own property, and is not dependent in any manner upon its value either to himself or to his adversary." *Wheatley* v. *Chrisman,* 24 Pa. 298. One may not disturb another's field simply because no actual damage is done thereby; the owner of the field is entitled to hold it free from disturbance by another regardless of the amount of damage. The same principle applies to a riparian owner's right to have the undisturbed flow of the stream.

Of course the right of a lower riparian owner to the natural flow of the stream through his land is subject to reasonable uses of the water by upper riparian owners as it runs through their lands before reaching his. 2 Farnham on Waters, sec. 464.

Each riparian proprietor has a right to a reasonable use of the waters flowing through or by his land, for the purpose of supplying his natural wants. Says Chancellor Kent: "Every proprietor of lands on the banks of a river has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run (*currere solebat*), without diminution or alteration. No proprietor has a right to use the water, to the prejudice of other proprietors, above or below him, unless he has a prior right to divert it, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Aqua currit et debet currere ut currere solebat* is the language of the law. Though he may use the water while it runs over his land as an incident to the land, he cannot unreasonably detain it, or give it another direction, and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors he cannot divert or diminish the quantity of water which would otherwise descend to the proprietors below. * * * This is the clear and settled general doctrine on the subject, and all the difficulty that arises consists in the application. The owner must so use and apply the water as to work no material injury or annoyance to his neighbor below him, who has an equal right to the subsequent use of the same water. * * * Streams of water are intended for the use and comfort of man; and it would be unreasonable and contrary to the universal sense of mankind, to debar every riparian proprietor from the application of the water to domestic, agricultural, and manufacturing purposes, provided the use of it be made under the limitations which have been mentioned; and there will, no doubt, inevitably be, in the exercise of a perfect right to the use of the water, some evaporation and decrease of it, and some variations in the weight and velocity of the current. But *de minimis non curat lex,* and a right of action by the proprietor below would not necessarily flow from such consequences, but would depend upon the nature and extent of the complaint or injury, and the manner of using the water. All that the law requires of the party, by or over whose lands a stream passes, is, that he should use the water in a reasonable manner, and so as not to destroy, or render use-

less, or materially diminish, or affect, the application of the water by the proprietors above or below on the stream." 3 Kent. Com. 439.

Defendants, however, are not making use of the water of the stream as riparian owners. Use of the water is not made on the riparian land. Defendants are not upper riparian owners. It is true they claim the right to take the water under purchase from the upper riparian owner. But may the latter make sale of the water to the infringement of plaintiff's right to enjoy the flow through his land? By making sale of the water to defendants, the upper riparian owner is not supplying a natural want of himself as a riparian owner. He is not making the reasonable and ordinary use of the water that he himself might make on the riparian land. Defendants, claiming under him, can have no greater right than he. The diversion of the water by the pipe line to non-riparian land is an extraordinary use to which the riparian owner who sold to defendants is not entiled by the law relating to riparian rights. It is not the reasonable use contemplated by the law of riparian ownership. No reasonable use of the water is made in connection with the riparian land, but the water is taken therefrom and conducted wholly around the land of the plaintiff, so that he is deprived of his legal right to its flow in the natural course. Reasonable use of the water in connection with the riparian land is legal, but any use of the water elsewhere by a diversion of the water, without returning it to the stream for the use of lower proprietors, is wholly wrongful. The distinction here drawn is not always observed, but it should be marked. The learned Judge Cooley, in a case involving rights in relation to uses of water as between adjoining riparian proprietors on their respective riparian lands, said: "In considering the case it may be remarked at the outset that it differs essentially from a case in which a stream had been diverted. from its natural course and turned away from a proprietor below. No person has a right to cause such a diversion, and it is wholly a wrongful act, for which an action will lie without proof of special damage. It differs, also, from the case of an interference by a stranger, who, by any means, or for any cause, diminishes the flow of the water; for this also is wholly wrongful, and no question of the reasonableness of his action in caus-

ing the diminution can possibly arise." *Dumont* v. *Kellogg,* 29 Mich. 420. No legal right exists in a riparian owner for the use of the water beyond his riparian land, and any such use is an infringement of the rights of the lower riparian proprietors who are thereby deprived of the flow. *Gould* v. *Eaton,* 117 Cal. 539; *Gould* v. *Stafford,* 77 Cal. 66; *Heilbron* v. *Fowler Switch Canal Co.,* 75 Cal. 426; *Williams* v. *Wadsworth,* 51 Conn. 277; *Hayden* v. *Long,* 8 Or. 244.

Emery, Vice Chancellor, in *Paterson* v. *East Jersey Water Co.,* 74 N. J. Eq. 49, affirmed 77 N. J. Eq. 588, held: "That the diversion of the water by the defendant for the purposes of sale is an infringement of the complainant's right as a lower riparian owner to the continued flow of the stream, and that without proof of any actual or perceptible damage so far as the establishment of its legal right is concerned, if the diversion is of such a perceptible and sensible amount as not to be excluded under the maxim *'de minimus,'* complainant is entitled to resort to this court for protection, in view of the fact, against defendant's claim of the right to divert and to continue the diversion." And it was further held by the Vice Chancellor that in determining whether the maxim, *de minimis non curat lex,* shall be applied to prevent injunctive relief against the diversion, the condition of the stream at the time of its lowest stage must be considered, and not the average flow.

Now, in the case before us the maxim referred to can not be invoked. During the summer, the small stream has such a low stage of water that the amount conducted away by the pipe line is no inconsiderable part of that which could then flow through plaintiff's land but for the diversion. No doubt a diversion of water from the current of the Great Kanawha River by a pipe line no larger than an inch at the outlet would be so inconsiderable as to meet no recognition on the complaint of a lower riparian owner. But plaintiff's case is entirely different. The current of the stream at its low stage is perceptibly diminished. We need not detail evidence. That the water at the low stage is materially reduced, palpably appears from the facts and circumstances proved. Indeed, it would seem from the evidence of disinterested witnesses, one a millwright well acquainted with the mill and its water-power, that the diversion is sufficient to

delay the operation of the mill at the low stage of water, were that fact important in the vindication of plaintiff's right to the natural flow of the stream.

Though the diversion of the water is made from a spring, yet it appears clearly that the spring is a source of the stream. Therefore, a diversion of the water from the spring is nevertheless a diversion of the stream. "A river begins at its source, when it comes to the surface; and a stoppage of it at the spring-head is just as much a diversion as if the water had been taken lower down." Angell on Watercourses, sec. 108q.

The diversion of the water is a private nuisance. Angell on Watercourses, sec. 388. The unlawful act of defendants will, in time, ripen into an adverse right if permitted to continue. Equity affords complete and speedy redress in the premises. "It is well established that Courts of Equity have concurrent jurisdiction with Courts of Law, in cases of private nuisances; and the interference of the former by injunction, is founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing a multiplicity of suits." Angell on Watercourses, sec. 444. In this connection Mr. Justice Story said: "If, then, the diversion of water complained of in the present case is a violation of the right of the plaintiffs, and may permanently injure that right, and become, by lapse of time, the foundation of an adverse right in the defendant, I know of no more fit case for the interposition of a Court of Equity, by way of injunction, to restrain the defendants from such an injurious act." *Webb* v. *Portland Manufacturing Co., supra.* In 40 Cyc. 615, many cases are cited to sustain the text that "equity has jurisdiction to restrain the unlawful diversion of a natural watercourse."

It may be, as is suggested in the brief for defendants, that plaintiff's mill is useless in these modern days and that he does not need the water. It may be that in good morals plaintiff should not deny the use of the water to defendants, his neighbors. These considerations can have no place in the determination of this suit. Plaintiff does object to the diversion. He does show violation of a right belonging to him, which the law will vindicate. He asks that the right be vindicated, and the law which guarantees it to him must respond. One may have timber going

to waste on his land, which his neighbor would like to use, still he may vindicate his right to let it waste there, by legally preventing it from being carried from the land. So it is with water under the circumstances of this case.

An order will be made reversing the decree. The unlawful diversion of the water from the stream will be perpetually enjoined. A decree to that effect will be entered here, it being the decree which the court below should have entered.

*Reversed and Decree Here.*