STATE EX REL. DORR SUMMERS, *et al.*

v.

EDGAR B. SIMS, AUDITOR

(No. 10867)

Submitted February 5, 1957. Decided April 2, 1957.

*H. G. Muntzing, James E. Ansel, W. Bryan Spillers,* for relators.

*Harold J. Powell,* for respondent.

DUCKER, JUDGE:

This is an original proceeding in mandamus in which the relators, Dorr Summers, D. C. Summers and Martha S. Painter, Administratrix of the estate of Anna B. Summers, deceased, seek a writ from this Court to compel the respondent, the Honorable Edgar B. Sims, Auditor of the State of West Virginia, to issue warrants in due form upon the State Treasury for the payment of an appropriation made by the Legislature in favor of the relators, in the amounts of $8400.00 to Dorr Summers and $4300.00 to D. C. Summers for personal injuries and damages to property, and $1600.00 to Martha S. Painter, Administratrix, for damages for wrongful death, all occasioned by the negligence of the State Road Commission in construction and maintenance of a highway bridge.

After a full hearing the Attorney General, in the manner prescribed in Chapter 14, Article 2 of the Code of West Virginia, as amended by Chapter 18 of the Acts of the Legislature, Regular Session, 1953, recommended to the Legislature the payment of the claims in the amounts stated as a moral obligation of the State, and appropriation for payment was made therefor in the budget contained in Chapter 1, Title 2, Section 4 of the Acts of the Legislature, 1956. Upon presentation of the claims to the respondent on May 28, 1956, payment was refused for the reason, as stated in his answer filed herein, that the damages for which the payments were to be made were not received as a direct and proximate cause of the negligence of the State Road Commission, but rather that such damages were the result of "an Act of God", namely, a flood caused by excessive rainfall.

The pleadings in the case consist of the petition of the relators, the answer of the respondent and the petitioners' replication to respondent's answer. A transcript of the evidence and proceedings before the Attorney General is by stipulation made a part of the record here. The refusal by the respondent to pay the claims

is made to the whole amounts of the claims. The facts are not in dispute.

The relators, Dorr Summers, D. C. Summers and their mother, Anna B. Summers, for the latter of whom the relator, Martha S. Painter is Administratrix, were the owners of and resided on certain land on Horse Fork Creek in Clay County, West Virginia, the interest of said Anna B. Summers being a life estate only therein, with the remainder in her said two sons. On the land there was a six room dwelling house in which the Summers family resided, a small four room dwelling house and some outbuildings, and the said property was situate in a valley approximately 254 feet wide bounded by parallel ridges running in a general northern direction with state secondary route number 36/1 on the eastern side and Horse Fork Creek on the western side, with the road making a sharp turn to the left (westerly) at the northeastern corner of the said land and crossing the valley and said creek.

In 1942 the State Road Commission constructed, about a hundred feet downstream or below the location of the Summers dwelling, a fill across the valley from the place where the road made a left turn on the eastern side of the valley as an approach to a bridge which it constructed across Horse Fork Creek. This fill was from five to seven feet in height and the bridge was approximately 34 feet in length and about 10 feet in height and of wooden construction, with two end abutments pile driven into the ground and a bent located approximately in the center with three or four poles set on a mud sill approximately a foot wide, and stringers laid from the end abutments to the center bent and three inch boards laid on the stringers. As the state of repair of the bridge became bad, it became necessary for the State Road Commission to repair the bridge from time to time, and in doing so it placed additional supports between the end abutments and the center bent, thereby reducing the areaway for the passage of water beneath the bridge inviting and causing the lodging

of debris against such supports, so as to largely effect a dam in the stream, and that when there was high water, brush, tree tops and debris lodged under the bridge. The fill prevented the natural flow of the water and caused the water to spread across the valley.

On the night of June 16, 1953, and the early morning hours of June 17, 1953, there was a heavy rain in the watershed or drainage basin of Horse Fork Creek and the stream was so flooded that it backed up around the Summers' dwelling houses and lifted them and the outbuildings from their foundations. The bridge washed out and the houses were broken apart and cast downstream, and the occupants, Anna B. Summers and her two sons were thrown into the waters, the mother was drowned and the two sons sustained personal injuries. Claims for personal injuries and damages to property were made before the Attorney General by Dorr Summers in the sum of $15,250.00, by D. C. Summers in the sum of $6,050.00, and for wrongful death by Martha S. Painter, Administratrix of the estate of Anna B. Summers in the sum of $10,000.00. The Attorney General recommended to the Legislature, as a moral obligation of the State, the appropriation of funds to pay to Martha S. Painter, Administratrix, $1600.00, Dorr Summers, $8400.00 and D. C. Summers, $4300.00, and appropriations therefor were accordingly made, but payment thereof by the Auditor was refused.

For this Court to grant the writ of mandamus sought in this case, the following things must have occurred: The State Road Commission must have been negligent in either the construction or maintenance of the bridge which was washed out, and such negligence must have been such as would have been sufficient to create liability if some one other than the State had been the negligent party. After action by the Attorney General, the Legislature must have found that the State by the act or omission of its agent, The State Road Commission, has been guilty of negligence and must have declared that a moral obligation of the State exists and

must have appropriated, and did appropriate, funds for the payment of the claims.

By Section 33, Article 4 of Chapter 17 of the Code of West Virginia, the State Road Commission of West Virginia, an instrumentality or agent of the State, is required to inspect all bridges under the control of the Commission and promptly condemn, close and repair any such bridge when it is found unsafe. This provision must of necessity include the duty to construct any bridge safely as well as to maintain it safely. The evidence indisputably shows that the Road Commission constructed along one side of Horse Fork Creek a fill which narrowed the channel of the stream at the approach to the bridge, and after building the bridge, attempted to repair it with additional supports between the center of the bridge and the ends, thus forming an obstruction to and damming of the flow of water under the bridge, and which we think was reasonably foreseeable as a cause of trouble when there might be heavy rainfall. Such negligence, in our opinion, would be actionable if it were not for the immunity of the State. This negligence being actionable as between private individuals, the moral obligation is created, and although the authority is given to the Attorney General to make a finding and recommendation on the facts and the Legislature to approve and appropriate, the question of whether or not a moral obligation of the State exists is a judicial question and, therefore, is subject to determination by the Courts. *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805; *State ex rel. Utterback* v. *Sims,* 136 W. Va. 822, 68 S. E. 2d 678; *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151. Accordingly, we here so determine that such a moral obligation exists.

The respondent's answer is to the effect that the sole cause of the damage inflicted in this case was an "Act of God", namely, the heavy rainfall that occurred in the vicinity on the night of June 16th and early morning of June 17th, 1953. While there is some varying evidence as to the extent of the rainfall at that time, it appears

that the rain covered a wide area and was of a general nature with a heavy concentration in the drainage basin of Horse Fork Creek. An "Act of God" is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected. *Ellerson Floral Co.* v. *C. & O. Ry. Co.*, 149 Va. 809, 141 S. E. 834; *Taylor* v. *Chesapeake & Ohio Railway Co.*, 84 W. Va. 442, 100 S. E. 218. It does not seem reasonable to say that the fill constructed and the addition of supports in the bridge would not have produced the result which appears in this case, and that such results were not foreseeable and could not have been anticipated. Since we think the negligence of the State Road Commission in constructing the fill and maintaining the bridge at said place was actionable, it is not necessary for a decision in this case that it be determined positively that an "Act of God" did or did not occur at that time. It is not clearly shown that the heavy rainfall could be so classified. For an "Act of God" to exonerate one from a claim for damages, it must have been the sole cause, and not just a contributing cause of the injuries or damages sustained. *Atkinson* v. *Chesapeake & Ohio Railway Co.*, 74 W. Va. 633, 82 S. E. 502; *Williams* v. *Columbus Producing Co.*, 80 W. Va. 683, 93 S. E. 809; *Mitchell* v. *Virginian Railway Co.*, 116 W. Va. 739, 183 S. E. 35; *Riddle* v. *Baltimore & Ohio Railway Co.*, 137 W. Va. 733, 73 S. E. 2d 793.

Inasmuch as it appears that the damages arose from actionable negligence on the part of the agency of the State and that a moral obligation was created, the Legislature could appropriate funds for the payment of the damages caused by such negligence and such appropriation and payment would be for a public and not a private purpose. *Price* v. *Sims,* 134 W. Va. 173, 58 S. E. 2d 657; *Weekley* v. *Sims,* 139 W. Va. 263, 79 S. E. 2d 847; *State ex rel. Ridgley* v. *Sims,* 142 W. Va. 201, 94 S. E. 2d 857.

This Court, by the decisions hereinbefore cited, has held that where it has been properly determined that

there is negligence which would be actionable as between private persons, and that a moral obligation of the State exists to make compensation therefor, and the State has made appropriation of funds for the payment, it is the duty of the State Auditor to make the necessary disbursement for payment of such moral indebtedness. Any further discussion of the principle enunciated in the authorities referred to is needless.

We are of the opinion that this case falls within the rule enunciated in those cases, and the writ in mandamus, as prayed for by petitioners, is hereby awarded.

*Writ awarded.*