607 S.E.2d 863

## In re: FLOOD LITIGATION.

## No. 31688.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 2004.

Decided Dec. 9, 2004.

---

**4.** For a discussion of the circuit court's denial of Mr. Ashby's petition for a writ of mandamus, see note 1, *supra.*

Stuart Calwell, Esq., Thomas N. White, Esq., The Calwell Practice, Charleston, Vincent Trivelli, Esq., The Calwell Practice, Morgantown, Warren R. McGraw, II, Esq., Cindy Kiblinger, Esq., James F. Humphreys & Associates, Charleston, for Appellants.

Alvin L. Emch, Esq., Jill M. Obenchain, Esq., Jackson & Kelly, Charleston, for Appellees.

W. Henry Jernigan, Esq., Mychal S. Schulz, Esq., Christopher B. Power, Esq., Dinsmore & Shohl, LLP, Charleston, for Appellees' Master Brief.

Larry W. George, Esq., Charleston, for Landowners & Lessors–Lessees.

R. Ford Francis, Esq., Brian D. Morrison, Esq., Schumacher, Francis & Nelson, Charleston, for Small Defendants.

David L. Yaussy, Esq., Timothy M. Miller, Esq., Robinson & McElwee, for Timber Defendants.

Jane E. Harkins, Esq., Brown & Levicoff, PLLC, for Amicus Curiae, West Virginia Forestry Association.

Alvin L. Emch, Esq., Jackson & Kelly, for Amici Curiae, West Virginia Coal Association, West Virginia Oil and Natural Gas Association.

Robert W. Lawson, III, Esq., for Amici Curiae, West Virginia Farm Bureau, West Virginia Land and Mineral Owners Council, West Virginia Woodland Owners Association.

John R. Hoblitzell, Esq., for Amici Curiae, West Virginia Economic Development Council, West Virginia Business and Industry Council, West Virginia Roundtable, West Virginia Chamber of Commerce.

Denise Hoffner–Brodsky, Esq., for Amicus Curiae, Sierra Club.

MAYNARD, Chief Justice.

In this case, we answer several certified questions from the Flood Litigation Panel in regards to lawsuits arising from July 8, 2001, floods in several counties in southern West Virginia.[1]

## I.

### FACTS

On July 8, 2001, several heavy rainstorms passed over southern West Virginia and areas of Boone, Fayette, Kanawha, McDowell, Mercer, Raleigh, and Wyoming counties were flooded. These floods caused property damage, personal injury, and death.

Subsequently, 489 plaintiffs,[2] who are private residential property owners and occupiers, filed actions in the above counties against 78 different defendants including coal companies, timbering companies, landowners, lessors, railroads, and gas companies. Several of the defendants were involved in various ways in the extraction and removal of natural resources such as coal, oil, and timber, which altered or disturbed the natural state of the land. Plaintiffs allege in their complaints that Defendants should be responsible for damage to personal property and real estate, personal injury, and wrongful death upon various theories of liability including strict liability; unreasonable use of land; negligence; interference with riparian rights; and nuisance.

Pursuant to an administrative order of this Court dated May 16, 2002, then Chief Justice Robin Davis referred the July 8, 2001, flood

---

**1.** We wish to acknowledge the contribution of amici curiae who filed briefs in this case, West Virginia Forestry Association; West Virginia Coal Association; West Virginia Oil and Natural Gas Association; West Virginia Farm Bureau; West Virginia Land and Mineral Owners Council; West Virginia Woodland Owners Association; West Virginia Economic Development Council; West Virginia Business and Industry Council; West Virginia Roundtable; West Virginia Chamber of Commerce; and Sierra Club.

**2.** While the certification order indicates that there are 489 plaintiffs, the brief of the plaintiffs asserts that "some 3,500 plaintiffs have joined in the lawsuit claiming a non-trespassory interference with their use and enjoyment of their property by the defendants' use of defendants' property."

cases to the Flood Litigation Panel for determination.[3] The Panel thereafter held hearings and decided that the watersheds and Plaintiffs involved have different factual patterns but all of the cases have common issues of law. By order entered on August 1, 2003, the Panel certified nine questions to this Court which we decided should be reviewed and consequently docketed for hearing.[4] In its certification order, the Panel indicated that it certified these questions pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure, in that it arises from a motion for judgment on the pleadings; W.Va.Code § 58–5–2 (1998); and *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994).[5]

Our review of the questions certified by the Flood Litigation Panel leads us to conclude, with the exception discussed *infra*, that they are proper for certification. As noted above, the questions arise from a motion for judgment on the pleadings. The provisions of W.Va.Code § 58–5–2 (1998), specifically authorize certification of any question of law arising from such a motion. Also, we find that there is a sufficiently precise and undisputed factual record on which the legal issues can be determined, and that these legal issues substantially control the case. *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994). Accordingly, we now proceed to address the questions certified.

## II.

### STANDARD OF REVIEW

■ As a preliminary matter, we note that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### DISCUSSION

The first question and its subsections certified to this Court and the Flood Panel's

---

**3.** The Chief Justice of this Court originally received a motion, filed in the Circuit Court of Fayette County in *Sandra Blake, et al. v. Bluestone Coal Corporation, et al.*, Civil Action No. 01–C–221–H, pursuant to Rule 26.01 of the West Virginia Trial Court Rules, to refer to the Mass Litigation Panel certain litigation pending before seven circuit courts. This motion was referred to the Honorable Gary L. Johnson, Judge of the Twenty–Eighth Judicial Circuit as a member of the Mass Litigation Panel, for the purpose of conducting a hearing and submission of findings of fact and a recommendation to the Chief Justice regarding the motion to refer. Judge Johnson essentially concluded that the issues raised in the flood litigation cases could be more efficiently and fairly resolved by referral to the Mass Litigation Panel. By order of May 16, 2002, the Chief Justice granted the motion to refer as recommended by Judge Johnson.

**4.** In its certification order, the Panel explained that for the purposes of the motion for judgment on the pleadings and the motion for certification, it assumed as true the following:

1. The rain event that occurred on July 8, 2001, was of an unusual nature causing a great deal of rain in the watersheds in issue.

2. Several of the defendants were involved in various ways in the extraction and removal of natural resources (coal, oil and timber) which altered or disturbed the natural state of the land in the various watersheds.

3. This disturbance of the land has caused an increase in the peak flow of surface water onto the properties of the plaintiffs causing personal injury, injury to property (real and personal) and wrongful death.

4. In most cases the removal and extraction of natural resources was done under permits issued by state and federal agencies and conformed with the requirements of the permits.

5. The damages suffered by the plaintiffs were more severe due to the disturbance of the land.

**5.** According to Rule of Civil Procedure 12(c),

*Motion for judgment on the pleadings.*—After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W.Va.Code § 58–5–2 concerns certification to this Court and provides, in part, that "[a]ny question of law, including ... a motion for judgment on the pleadings ... may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision[.]" Finally, in Syllabus Point 3 of *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994), this Court held that "[q]uestions subject to certification ... are limited to any question arising upon ... [*inter alia*] a challenge of the sufficiency of a pleading."

answers are as follows:[6]

1. Whether the plaintiffs have a cognizable cause of action based on allegations of unreasonable use of land under the balancing test set forth in *Morris Associates, Inc. v. Priddy,* 181 W.Va. 588, 383 S.E.2d 770 (1989).

Answer of the Flood Panel: Yes.

1a. In the reasonable use test, may the plaintiffs' balancing test include such intangibles as the right to peaceful enjoyment of land, undetermined value and the particular value a [person's] home holds for him [or her]?

Answer of the Flood Panel: Yes.

1b. May the defendants' test include such things under the social utility as possession of electricity, heat, and other needs of the populations generally?

Answer of the Flood Panel: Yes.

 Appellees and Defendants herein assert that the Panel is correct in concluding that Appellants and Plaintiffs can state a cognizable cause of action for unreasonable use under *Morris.* However, Defendants assert that *Morris* applies only to claims for diversion of surface waters onto *adjoining* landowners' property. Defendants reason that foreseeability is presumed when the other landowner is adjoining, whereas the same is not true when the other landowners are not adjoining. For their part, Plaintiffs are unhappy with the question as formulated, urge this Court to acknowledge that there is no practical or legal difference between the rules in *Morris* and *Hendricks v. Stalnaker,* 181 W.Va. 31, 380 S.E.2d 198 (1989), and adopt Section 833 of the Restatement (Second) of Torts as well as the "compensation test" for unreasonableness found in Section 826(b) of the Restatement.

First, we reject Defendant's argument that *Morris* applies only to diversion of surface waters onto *adjoining* landowners' property. As we discuss *infra,* one of the factors to be considered in determining reasonableness is foreseeability that harm will result from the use. We believe that to adopt an inflexible rule that a defendant cannot be held liable to nonadjacent landowners under the *Morris* reasonableness test may unfairly prevent recovery in some instances where the harm to non-adjacent landowners caused by the defendant was foreseeable due to the specific topography of the land. Thus, the better rule is to permit non-adjacent landowners to bring an action under *Morris* with the question of reasonableness best left to the jury. Accordingly, we reformulate certified question number 1 as follows,[7]

Whether adjacent and non-adjacent plaintiffs have a cognizable cause of action based on allegations of unreasonable use of land under the balancing test set forth in *Morris Associates, Inc. v. Priddy,* 181 W.Va. 588, 383 S.E.2d 770 (1989).

Accordingly, we now proceed to answer question 1 as reformulated.

 We conclude that Plaintiffs have a cause of action under *Morris v. Priddy.* In *Morris,* the plaintiffs filed a complaint against the defendant alleging that the flooding that damaged their property was caused by the fill the defendant had placed on his property. This Court discussed at length the development of our law with regard to a landowner's liability for altering the surface of his or her land to change the course or amount of surface water that flows off the land onto an adjoining landowner's property. After rejecting the civil rule which, we explained, rests on the maxim, "So use your own property or right that you do not injure

---

6. The Flood Panel certified nine questions. Plaintiffs allege in their brief that the Panel erred in not certifying Plaintiffs' 31 proposed questions. After reviewing these proposed questions, we find no merit to Plaintiffs' claim. Instead, we believe that the questions certified by the Panel as reformulated by this Court are sufficient to control the relevant issues that will arise below.

7. This Court has held,

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code,* 51–1A–1, *et seq.* and *W.Va.Code,* 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

Syllabus Point 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993).

another," *Morris*, 181 W.Va. at 590, 383 S.E.2d at 772, and the common law rule, which allows "each owner to fight surface water as he chooses," *id.*, *citing Jordan v. City of Benwood*, 42 W.Va. 312, 315, 26 S.E. 266, 267 (1896), we settled on a new rule, set forth in Syllabus Point 2, which provides, in part:

Generally, under the rule of reasonable use, the landowner, in dealing with surface water,[8] is entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the adjoining landowners, as well as social utility. Ordinarily, the determination of such reasonableness is regarded as involving factual issues to be determined by the trier of fact.

(Footnote added). In adopting this rule from the Connecticut Supreme Court case of *Page Motor Co., Inc. v. Baker*, 182 Conn. 484, 438 A.2d 739 (1980), we reasoned:

An increasing number of courts have come to the conclusion that both the civil and the common law rules, even as modified, are too inflexible to meet the demands of an urban society. The development of land for commercial, industrial, and housing complexes requires alteration of the property. If this is to occur, an owner must be able to take reasonable steps to develop property without being subjected to suit. In the development of property that is not entirely level, there is generally a need for artificial drainage to handle surface waters and, by reasonably using such devices, liability should not necessarily result.

*Morris*, 181 W.Va. at 591, 383 S.E.2d at 773. The Panel below presumed as true in its certification order that Defendants' disturbance of the land caused an increase in the peak flow of surface water onto the properties of Plaintiffs. Therefore, we believe that our rule in *Morris* is applicable to the facts

of this case. Accordingly, we answer question one, as reformulated, in the affirmative.

■ As noted above, the Flood Panel certified two subsections to question one and also answered these in the affirmative. However, due to the fact-specific inquiry demanded of a jury in deciding the question of reasonableness, we do not find it desirable to delineate with specificity all of the factors to be considered when determining the issue of reasonableness. Therefore, we decline to answer questions 1.a. and 1.b. Rather, after surveying the tests for reasonableness utilized in other jurisdictions, we hold that in determining whether a landowner has acted reasonably in dealing with surface water pursuant to the "reasonable use" rule set forth in Syllabus Point 2 of *Morris Associates, Inc. v. Priddy*, 181 W.Va. 588, 383 S.E.2d 770 (1989), the jury generally should consider all relevant circumstances, including such factors as amount of harm caused, foreseeability of harm on part of landowner making alteration in the flow of surface waters, the purpose or motive with which the landowner acted, *etc.* *See, e.g., Collins v. Wickland*, 251 Minn. 419, 88 N.W.2d 83 (Minn.1958); *Keys v. Romley*, 64 Cal.2d 396, 412 P.2d 529, 50 Cal.Rptr. 273 (1966); and *Rick v. Worden*, 369 N.W.2d 15 (Minn.Ct.App.1985). We now turn to certified question number 2.

The second question certified by the Flood Panel is:

Whether the plaintiffs have a cognizable cause of action upon allegations that the defendants' use of the land is a private nuisance and therefore actionable under the standards set forth in *Hendricks v. Stalnaker*, 181 W.Va. 31, 380 S.E.2d 198 (1989).

Answer of the Flood Panel: Yes.

Our review of the stipulated facts leads us to conclude that there is not a sufficiently precise and undisputed factual record on which the issue of whether Plaintiffs have a

---

**8.** In Syllabus Point 2, in part, of *Neal v. Ohio River R.R. Co.*, 47 W.Va. 316, 34 S.E. 914 (1899), we defined "surface water" as,

water of casual, vagrant character, oozing through the soil, or diffusing and squandering over or under the surface, which, though usually and naturally flowing in known direction, has no banks or channel cut in the soil; coming from rain and snow, and occasional outbursts in time of freshet, descending from mountains or hills, and inundating the country; and the moisture of wet, spongy, springy, or boggy land.

cause of action for nuisance can be determined. Therefore, we do not answer the second certified question. However, because further development of the evidence below may indicate that Plaintiffs have such a cause of action, we find it necessary to briefly discuss our applicable law and the parties' arguments on this issue.

Defendants contend that the Panel incorrectly found that Plaintiffs have a cause of action for private nuisance. According to Defendants, *Hendricks* applies only when the substantial interference with land is from something other than the diversion of surface water. Defendants base this assertion on the fact that this Court decided *Hendricks* four months prior to *Morris,* but declined to utilize *Hendricks'* private nuisance principles in *Morris.* Further, Defendants aver that under West Virginia law, a private nuisance is a *repeated* or *continuous* interference with another's use of land.

In *Hendricks,* the defendant dug a water well on his property. The plaintiff subsequently attempted to develop a septic system on property adjacent to the defendant's land. However, the Department of Health refused to issue a permit to the plaintiff because the septic system was too close to the defendant's water well. The plaintiff thereafter filed an action alleging that the defendant's well was a private nuisance. A jury returned a verdict in favor of the plaintiff. This Court reversed, and adopted a standard for bringing a private nuisance cause of action. This standard was set forth in Syllabus Points 1 and 2 of *Hendricks* as follows:

1. A private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land.
2. An interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm.

■ According to Defendants, *Hendricks* applies only to cases that involve interference with land use for reasons other than surface water diversion. This is incorrect. The fact is that this Court in *Hendricks* did not discuss the issue of surface water diversion simply because that issue

was not before us. In *Hendricks,* we defined a private nuisance to include "conduct that is intentional and unreasonable, negligent or reckless, or that results in an abnormally dangerous conditions or activities in an inappropriate place." *Hendricks,* 181 W.Va. at 33–34, 380 S.E.2d at 200 (citations omitted). There is nothing in this broad and inclusive definition that necessarily excludes a cause of action in nuisance for surface water diversion. Further, contrary to Defendants' assertions, nothing in our law limits a private nuisance to repeated or continuous interference with another's use of land. Finally, in Syllabus Point 2 of *Mahoney v. Walter,* 157 W.Va. 882, 205 S.E.2d 692 (1974), this Court held:

As a general rule, a fair test as to whether a business or a particular use of a property in connection with the operation of the business constitutes a nuisance, is the reasonableness or unreasonableness of the operation or use in relation to the particular locality and under all the existing circumstances.

Again, we are unable to conclude on the stipulated facts before us whether Plaintiffs have a cause of action for nuisance. Therefore, as the evidence is further developed below, the Panel and any trial court should apply the applicable law to the facts in order to decide whether a cause of action for nuisance lies in this case.

■ The second question we address is,

Whether the plaintiffs have a cognizable cause of action upon the allegation that the defendants were negligent in the use of their land and therefore answerable under the classic theory of negligence.

Answer of the Flood Panel: Yes.

■ Plaintiffs and Defendants concur that Plaintiffs have a cause of action for negligence. This Court agrees. We have held that, "[i]n matters of negligence, liability attaches to a wrongdoer ... because of a breach of duty which results in injury to others." Syllabus Point 2, *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988). Further,

The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man [or woman] in the defendant's position, knowing what he [or she] knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syllabus Point 3, *Sewell, supra.* This Court is aware of no reason why Plaintiffs should be foreclosed from the opportunity to prove that Defendants' breach of a duty caused or contributed to their injuries. Accordingly, we answer question number 3 in the affirmative.

The third question to be considered inquires,

Whether Plaintiffs have a cognizable cause of action upon the allegation that the operation of extracting and removing natural resources is an abnormally dangerous activity and whether Defendants are strictly liable to Plaintiffs for any damages caused by their activities.

Answer of the Flood Panel: No.

■■■ Plaintiffs aver that this question is based on an issue not before the Flood Panel. Rather, say Plaintiffs, their position is not that the extraction of natural resources, by its very nature, constitutes an abnormally dangerous activity, but that certain activities of Defendants in the course of extracting resources produce ancillary conditions that are unreasonably dangerous where the risk of flash flooding is concerned. In other words, say Plaintiffs, the alteration of the mountainous topography in southern West Virginia, which is the result of extraction of coal and timber, causes an abnormally high risk of flash flooding which should make Defendants strictly liable for damages. Thus, Plaintiffs seek to distinguish the *activity* of extracting natural resources from the *conditions* resulting from that activity. Defendants respond that their activities do not create a high risk of flooding and that any risk can be eliminated by the exercise of due care. They further assert that their activities should not be considered abnormally dangerous because they are common, appropriate where they are carried on, and their

value is not outweighed by their dangerous characteristics. Based on these arguments, we reformulate this question as follows:

Whether the plaintiffs have a cognizable cause of action upon the allegation that the operation of extracting and removing natural resources is an abnormally dangerous activity or that such activity produces ancillary conditions that create an unreasonably high risk of flash flooding so that the defendants are strictly liable to the plaintiffs for any damages caused by these activities.

In *Peneschi v. National Steel Corp. v. Koppers Co., Inc.,* 170 W.Va. 511, 295 S.E.2d 1 (1982), this Court adopted into the common law of this State *Fletcher v. Rylands,* 3 H. & C. 774, 159 Eng.Rep. 737 (1865), *rev'd Fletcher v. Rylands,* L.R. 1 Ex. 265 (1866), *aff'd Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868), as articulated in the *Restatement (Second) of Torts* (1976). "The basic principle of *Rylands* is that where a person chooses to use an abnormally dangerous instrumentality he is strictly liable without a showing of negligence for any injury proximately caused by that instrumentality." *Peneschi,* 170 W.Va. at 515, 295 S.E.2d at 5. "The 'rule' of *Rylands* is that 'the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in light of the character of that place and its surroundings.'" *Id., quoting* W. Prosser, *Law of Torts,* 508 (4th ed.1971).

The conditions and activities to which the rule has been applied have followed the English pattern. They include water collected in quantity in a dangerous place, or allowed to percolate; explosives or inflammable liquids stored in quantity in the midst of a city; blasting; pile driving; crop dusting; the fumigation of a party of a building with cyanide gas; drilling oil wells or operating refineries in thickly settled communities; an excavation letting in the sea; factories emitting smoke, dust or noxious gases in the midst of a town; roofs so constructed as to shed snow into a highway; and a dangerous party wall.

On the other hand the conditions and activities to which the American courts

have refused to apply Rylands v. Fletcher, whether they purport to accept or to reject the case in principle, have been with few exceptions what the English courts would regard as a "natural" use of land, and not within the rule at all. They include water in household pipes, the tank of a humidity system, or authorized utility mains; gas in a meter, electric wiring in a machine shop, and gasoline in a filling station;[9] a dam in the natural bed of a stream; ordinary steam boilers; an ordinary fire in a factory; an automobile; Bermuda grass on a railroad right of way; a small quantity of dynamite kept for sale in a Texas hardware store; barnyard spray in a farmhouse; a division fence; the wall of a house left standing after a fire; coal mining operations regarded as usual and normal; vibrations from ordinary building construction; earth moving operations in grading a hillside; the construction of a railroad tunnel; and even a runaway horse.

W. Page Keeton, *et al., The Law of Torts* § 78, 549—551 (5th ed.1984) (footnotes omitted and footnote added).

According to *Restatement (Second) of the Law of Torts* § 519 (1977),

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Further, § 520 of the *Restatement* indicates,

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

When we apply these factors to the facts before us, we find that Defendants are not strictly liable for their activities or the conditions their activities create. This Court simply does not believe that the day to day activities of Defendants necessarily create a high risk of flash flooding. Also, we are convinced that any increased risk of flooding which results from Defendant's extractive activities can be greatly reduced by the exercise of due care. In addition, extractive activities such as coal mining and timbering are common activities in southern West Virginia. Finally, we are unable to conclude that the great economic value of some of these extractive activities, such as coal mining, is outweighed by their dangerous attributes. Accordingly, we answer question 4, as reformulated, in the negative.

The fourth question is,

Whether the plaintiffs have a cognizable cause of action based on interference with riparian rights.

Answer of the Flood Panel: Yes.

██ Plaintiffs offer an alternative question to conform to their argument that this State's riparian rights law should be simplified by recognizing that interference with riparian rights is no different from any other nuisance claim.[10] Defendants assert that

---

**9.** *But see, contra,* Syllabus Point 5 of *Bowers v. Wurzburg,* 207 W.Va. 28, 528 S.E.2d 475 (1999), in which we held that "[t]he storage, sale, or distribution of gasoline is subject to the same analysis, as expressed in Restatement (Second) of Torts §§ 519 and 520 (1976), that we would apply to any other activity involving similar or greater danger to the public."

**10.** Specifically, Plaintiffs offer the following alternative question:

Does West Virginia recognize a cause of action for interference with riparian rights where such interference is either (a) a nuisance under §§ 821A–831 of the *Restatement (Second) of Torts;* or (b) is unreasonable under § 850A of the *Restatement (Second)?*

Plaintiffs cannot state a cognizable cause of action for riparian rights because they do not claim that they are unable to access waters on their property.

■■■■■ We use our power to reformulate certified question number 4 as follows:

Do those plaintiffs herein who are riparian owners, by virtue of the fact that they own property adjacent to a stream or through which a stream flows, have a cognizable cause of action for interference with riparian rights based on the fact that the stream's natural flow was increased by a flood or the water of the stream overflowed and stood upon the riparian owner's land?

In answering this question, we start with the definition of "[a] riparian right [as] "[t]he right of a landowner whose property borders on a body of water or watercourse ... to make reasonable use of the water." *Black's Law Dictionary* 1352 (8th ed.2004). Under our law,

The riparian owner has a property interest in the flow of a natural watercourse through or adjacent to his [or her] property.

The right of enjoying this flow without disturbance, interference, or material diminution by any other proprietor is a natural right, and is an incident of property in the land, like the right the proprietor has to enjoy the soil itself without molestation from his neighbors. The right of property is in the right to use the flow, and not in the specific water.

The riparian owner's right is to have the water pass his land in its natural course. Each proprietor may make any use of the water flowing over his premises which does not essentially or materially diminish the quantity, corrupt the quality or detain it so as to deprive other proprietors or the public of a fair and reasonable participation in its benefits. The obstruction or diversion of the natural watercourse or the introduction into it of sediment, sludge,

refuse or other materials which corrupt the quality of the water by upper riparian owners or users constitutes an infringement of the lower riparian owner's property right, which may be enjoined or give rise to a cause of action for damages. *Snyder v. Callaghan*, 168 W.Va. 265, 271–272, 284 S.E.2d 241, 246 (1981) (internal quotations and citations omitted). We have recognized that "[t]he right of a riparian proprietor to have the water of a stream pass his land in its natural flow is a right annexed to the soil and exists as a parcel of the land." Syllabus Point 2, *Roberts v. Martin*, 72 W.Va. 92, 77 S.E. 535 (1913). In addition, "[a] diversion of a natural water course, though without actual damage to a lower riparian owner, is an infringement of a legal right and imports damage." Syllabus Point 1, *id.* Further, "[t]he right of a riparian owner to the natural flow of the stream is not dependent upon its value to him or the use which he makes of it." Syllabus Point 3, *id.* Finally,

The obstruction or the diversion of a natural watercourse which restricts the natural flow of the water of the stream and causes such water to overflow, accumulate and stand upon the land through which such watercourse passes is an infringement of a property right of the landowner and imports damage to such land.

Syllabus Point 3, *McCausland v. Jarrell*, 136 W.Va. 569, 68 S.E.2d 729 (1951).

The facts below indicate that the July 8, 2001, floods impacted, to varying degrees, portions of the Coal River, Lower New River, Middle New River, Tug River, Upper Guyandotte River, and Upper Valley Watershed and the sub-watersheds within them. We find that Plaintiffs below whose property borders on a stream or river that is located in the watersheds or sub-watersheds listed above and that flooded on July 8, 2001, have a cognizable cause of action for interference with riparian rights. This is due to the fact that these riparian owners have a right to the natural flow of a stream running adjacent to or through their property and a substan-

---

In light of our reformulation of the certified question and our answer thereto, we decline to

address Plaintiffs' recommended question.

tial increase in the natural flow, such as occurs during a flood, is an infringement of that right. In addition, those plaintiffs who are riparian owners have claims for damages caused by stream overflows that flooded their land. Therefore, we answer certified question 5, as reformulated by this Court, in the affirmative.[11]

The fifth question we address asks,

> In the event that a landowner conducts the extraction and removal of natural resources on its property in conformity with federal law and with permits issued by appropriate federal agencies, is any state court action preempted for damages caused by surface waters accumulating and migrating on residential property?

Answer of Flood Panel: No.

Plaintiffs and Defendants herein agree with the Flood Panel.

■■■■■ As a general rule, "preemption is disfavored in the absence of convincing evidence warranting its application." *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996). "As a result, there is a strong presumption that Congress does not intend to preempt areas of traditional state regulation." *Chevy Chase Bank v. McCamant*, 204 W.Va. 295, 300, 512 S.E.2d 217, 222 (1998) (citation omitted). Congressional intent to preempt state law may be either express or implied. *See Chevy Chase Bank*, 204 W.Va. at 300, 512 S.E.2d at 222 (congressional intent "may be manifested by express language in a federal statute or implicit in the structure and purpose of the statute" (citation omitted)). "To establish a case of express preemption requires proof that Congress, through specific language, preempted the specific field covered by state law.... To prevail on a claim of implied preemption, 'evidence of a congressional intent to pre-empt the specific field covered by state law' must be pinpointed." *Hartley*, 196 W.Va. at 674, 474 S.E.2d at 604 (citation omitted). There are two types of implied

preemption which are field preemption and conflict preemption.

> [F]ield pre-emption[ ] [occurs] where the scheme of federal regulation is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' " and conflict pre-emption[ ] [occurs] where "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"

*Id., citing Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992).

The parties herein have not cited to us nor are we aware of express language in a federal statute that preempts state causes of action for damages under the specific facts of this case. In addition, we are unable to pinpoint any evidence of congressional intent to preempt such an action. Finally, it is clear that Congress left ample room for state regulation of the extraction and removal of natural resources like that involved herein in light of such state legislation as the *Surface Coal Mining and Reclamation Act*, W.Va. Code §§ 22-3-1 to 22-3-19. Therefore, we conclude that federal law does not preempt, Plaintiffs' claims below. Accordingly, we answer certified question number 6 in the negative.

The sixth question is,

> In the event that a landowner conducts the extraction and removal of natural resources on its property in conformity with state law and with permits issued by appropriate state agencies, does this vitiate any cause of action for negligence, nuisance or unreasonableness?

Answer of Flood Panel: Yes.

Plaintiffs apparently read this question to mean that Defendants' conformity with State law provides absolute immunity from suit, which they vehemently deny. Defendants assert that conformity to State law "certainly

---

**11.** We agree with Defendants' assertion that to the extent the riparian rights doctrine applies to Plaintiffs, the standard for liability is reasonable use. This Court held in Syllabus Point 4 of *Roberts v. Martin, supra*, that "[t]he right of a

lower riparian owner to the natural flow of the stream is subject only to a reasonable use of the water by the upper riparian owners as it runs through their lands before reaching his [or hers]."

mitigates" against any causes of action stated by Plaintiffs. Because of the ambiguity in the question as framed by the Flood Panel as well as in the parties' discussion of the issue, we reformulate the question as follows:

Is compliance of a landowner in the extraction and removal of natural resources on his or her property with the appropriate state and federal regulations competent evidence in any cause of action against the landowner for negligence or unreasonable use of the landowner's land if the injury complained of was the sort the regulations were intended to prevent?

▮▮▮ This Court has held that,

Failure to comply with a fire code or similar set of regulations constitutes *prima facie* negligence, if an injury proximately flows from the non-compliance and the injury is of the sort the regulation was intended to prevent; on the other hand, compliance with the appropriate regulations is competent evidence of due care, but does not constitute due care *per se* or create a presumption of due care.

Syllabus Point 1, *Miller v. Warren,* 182 W.Va. 560, 390 S.E.2d 207 (1990). Our holding is based on the rationale that,

If the defendants knew or should have known of some risk that would be prevented by reasonable measures not required by the regulation, they were negligent if they did not take such measures. It is settled law that a statute or regulation merely sets a floor of due care. *Restatement (Second) of Torts,* § 288C (1965); *Prosser and Keaton on Torts,* 233 (5th ed.1984). Circumstances may require greater care, if a defendant knows or should know of other risks not contemplated by the regulation.

*Id.,* 182 W.Va. at 562, 390 S.E.2d at 209. We find that the above-stated rule and its underlying rationale are applicable in this case. Therefore, we hold that compliance of a landowner in the extraction and removal of natural resources on his or her property with the appropriate state and federal regulations may be evidence in any cause of action against the landowner for negligence or unreasonable use of the landowner's land if the injury complained of is the sort the regulations were intended to prevent. Such com-

pliance, however, does not give rise to a presumption that the landowner acted reasonably or without negligence or liability to others in his or her extraction and removal activities. Accordingly, we answer question 6 in the affirmative.

This brings us to the final two questions certified which are as follows:

Whether the causation shall be limited to those matters proximately caused by the increase in peak flow (the increase in the flow of water that was caused by the extraction and removal of natural resources over the flow that would have normally occurred during the rain event) by the defendants' use of the land.

Answer of the Flood Panel: Yes.

Whether the measure of damages should be limited to those damages proximately cause[d] by the increase in peak flow (the increase in the flow of water that was caused by the extraction and removal of natural resources over the flow that would have normally occurred during the rain event) due to defendants' activities on the land.

Answer of the Flood Panel: Yes.

This Court reformulates these questions into a single question as follows:

Where a rainfall event of an unusual and unforeseeable nature combines with a defendant's actionable conduct to cause flood damage, and where it is shown that a discrete portion of the damage complained of was unforeseeable and solely the result of such event and in no way fairly attributable to the defendant's conduct, then is the defendant liable only for the damages that are fairly attributable to the defendant's conduct?

▮▮▮ In their arguments on this issue, the parties discussed the "Act of God" defense. Concerning this Court's law in regards to the Act of God defense, we have recognized that "[a]n 'Act of God' is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected." *State ex rel. Summers v. Sims,* 142 W.Va. 640, 645, 97 S.E.2d 295, 299 (1957).

In contrast, "[t]hat which reasonable human foresight, pains, and care should have prevented can not be called an act of God." Syllabus Point 2, *Atkinson v. Chesapeake & O. Ry. Co.,* 74 W.Va. 633, 82 S.E. 502 (1914). Thus, "[o]ne is answerable for the ordinary and proximate consequences of his negligence, and this liability includes all those consequences which may have arisen from the neglect to make provision for dangers which ordinary skill and foresight are bound to anticipate." Syllabus Point 1, *Adkins v. City of Hinton,* 149 W.Va. 613, 142 S.E.2d 889 (1965). "No liability attaches to any one for damages sustained by reason of the acts of God and the forces of nature, but a party whose wrongful acts co-operate with, augment, or accelerate those forces, to the injury of another, is liable in damages therefor." Syllabus Point 1, *Williams v. Columbus Producing Co.,* 80 W.Va. 683, 93 S.E. 809 (1917). In other words, "[f]or an act of God to constitute a valid defense and exonerate one from a claim for damages, it must have been the sole cause, and not just a contributing cause of the injuries or damages sustained." Syllabus Point 3, *Adkins v. City of Hinton, supra.*

The above-stated law has been applied in a number of our flood cases. *See Atkinson v. Chesapeake & O. Ry. Co., supra* (upholding judgment against defendant for diverting water from its natural course and flooding plaintiff's land and rejecting defendant's claim that extraordinary rain constituted an act of God); *Williams v. Columbus Producing Co., supra* (ruling that defendant's construction of oil rig and tanks in creek bed was negligence which contributed to, if it did not cause, flood which caused flood damage to plaintiff's property for which defendant is liable); *Riddle v. Baltimore & O.R. Co.,* 137 W.Va. 733, 747, 73 S.E.2d 793, 801 (1952) (affirming judgment against defendant railroad company for flood damages to plaintiff's property as result of inadequacy of defendant's culvert and stating that "even if the flood ... was unprecedented and of such character as to constitute an act of God, the defendant cannot effectively defend this action on that basis, for the reason that the inadequacy of its culvert was a contributing proximate cause of plaintiff's damages" (citation omitted)); *State ex rel. Summers v.*

*Sims,* 142 W.Va. at 645, 97 S.E.2d at 299 (awarding writ to compel State Auditor to issue warrants for payment out of Legislative appropriation for flood damages caused by negligent construction and maintenance of highway bridge and recognizing that "[f]or an 'Act of God' to exonerate one from a claim for damages, it must have been the sole cause, and not just a contributing cause of the injuries or damages sustained" (citations omitted)); and *Adkins v. City of Hinton, supra* (affirming judgment against city for flood damages where a heavy rainfall and a mass of debris from a negligently maintained dump damaged property).

Our research indicates that several courts have followed the rule recognized in 112 A.L.R. 1084, 1085 which states:

> In the majority of the cases involving the flooding of lands in which it appeared that part of the waters doing the damage complained of were the result of an act of God and part were the result of defendant's negligent or wrongful acts, it has been held that defendant was liable only for the proportionate amount of the damage caused by the waters attributable to his [or her] fault.

*See e.g., Republican Valley R. Co. v. Fink,* 18 Neb. 89, 24 N.W. 691, 693 (1885) (approving the jury instruction that "if you believe from the evidence that the defendant negligently constructed its line of road, bridges, and culverts, as complained of by the plaintiff in her petition, and such negligence contributed in large degree, along with the act of God, in causing the loss sustained by the plaintiff, it would be liable in damages for the additional damages sustained by the plaintiff by reason of any such negligence of the defendant"); *Wilson v. Hagins,* 116 Tex. 538, 545, 295 S.W. 922, 924 (1927) (where it was alleged that defendant erected embankment and ditch which diverted creek onto lands of plaintiff, court indicated that recovery should be limited to damages caused by diverted water); *Mark Downs, Inc. v. McCormick Properties, Inc.,* 51 Md.App. 171, 188, 441 A.2d 1119, 1129 (1982) (stating that "[w]here God and man collaborate in causing flood damage, man must pay at least for his share of the blame" (citations omitted)).

The defendants argue that the principle set forth in 112 A.L.R. 1084, *supra,* seeks to ensure an equitable result where an unusual and unforeseeable rainfall event combines with a defendant's actionable conduct to cause flood damage. We appreciate the equitable force of this argument.

On the other hand, the plaintiffs argue that even in such a case, the discrete portions and types of damage attributable to a defendant as a practical matter may well be so difficult to precisely calculate that a defendant may unfairly escape liability—if a heavy burden is placed on a plaintiff to show that portion or character of damage that is truly unforeseeable and not fairly attributable to the defendants. The plaintiffs point out that our longstanding law has therefore eschewed the notion of turning cases where a defendant has failed to properly manage and control rainfall leaving their property into nit-picking contests about how much damage a plaintiff "would have suffered anyway" if the defendant had acted properly. We also appreciate the equitable force of this argument.

■ Accordingly, we hold that where a rainfall event of an unusual and unforeseeable nature combines with a defendant's actionable conduct to cause flood damage, and where it is shown that a discrete portion of the damage complained of was unforeseeable and solely the result of such event and in no way fairly attributable to the defendant's conduct, the defendant is liable only for the damages that are fairly attributable to the defendant's conduct. However, in such a case, a defendant has the burden to show by clear and convincing evidence the character and measure of damages that are not the defendant's responsibility; and if the defendant cannot do so, then the defendant bears the entire liability. To the extent that our prior cases, such as *State ex rel. Summers v. Sims,* 142 W.Va. 640, 97 S.E.2d 295 (1957); *Riddle v. Baltimore & O.R. Co.,* 137 W.Va. 733, 73 S.E.2d 793 (1952), and others similarly situated held differently, they are hereby modified. Accordingly and subject to these qualifications, we answer certified question number 7, as reformulated, in the affirmative.

## IV.

## CONCLUSION

For the foregoing reasons, we answer the reformulated certified questions as follows:

1. Whether adjacent and non-adjacent plaintiffs have a cognizable cause of action based on allegations of unreasonable use of land under the balancing test set forth in *Morris Associates, Inc. v. Priddy,* 181 W.Va. 588, 383 S.E.2d 770 (1989).

Answer: Yes.

2. Whether the plaintiffs have a cognizable cause of action upon the allegation that the defendants were negligent in the use of their land and therefore answerable under the classic theory of negligence.

Answer: Yes.

3. Whether the plaintiffs have a cognizable cause of action upon the allegation that the operation of extracting and removing natural resources is an abnormally dangerous activity or that such activity produces ancillary conditions that create an unreasonably high risk of flash flooding so that the defendants are strictly liable to the plaintiffs for any damages caused by these activities.

Answer: No.

4. Do those plaintiffs herein who are riparian owners, by virtue of the fact that they own property adjacent to a stream or through which a stream flows, have a cognizable cause of action for interference with riparian rights based on the fact that the stream's natural flow was increased by a flood or the water of the stream overflowed and stood upon the riparian owner's land?

Answer: Yes.

5. In the event that a landowner conducts the extraction and removal of natural resources on its property in conformity with federal law and with permits issued by appropriate federal agencies, is any state court action preempted for damages caused by surface waters accumulating and migrating on residential property?

Answer: No.

6. Is compliance of a landowner in the extraction and removal of natural re-

sources on his or her property with the appropriate state and federal regulations evidence in any cause of action against the landowner for negligence or unreasonable use of the landowner's land if the injury complained of was the sort the regulations were intended to prevent?

Answer: Yes.

7. Where a rainfall event of an unusual and unforeseeable nature combines with a defendant's actionable conduct to cause flood damage, and where it is shown that a discrete portion of the damage complained of was unforeseeable and solely the result of such event and in no way fairly attributable to the defendant's conduct, then is the defendant liable only for the damages that are fairly attributable to the defendant's conduct?

Answer: Yes.

Certified questions answered.

Justice MCGRAW, deeming himself disqualified, did not participate in the decision in this case.

Judge CLAWGES, sitting by temporary assignment.