IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JEROME C. HURLEY and BESSIE M. HURLEY, husband and wife; WESLEY A. STANCIL and ZELLA E. MORAN, husband and wife; FRANK J. METTLER and LINDA E. METTLER, husband and wife; SHAWN HAMPTON and CHARITY HAMPTON, husband and wife, individually, and as guardians for their minor children EMARY and ELEXCIOUS HAMPTON; ANTON K. SWAFFORD and DOROTHY E. SWAFFORD, husband and wife; MARK DANTINNE, a single man; JON and DAGNE NORD, husband and wife; DEANNA LESTER, a single woman; DE LILA E. WALKER, a widow; JAMES K. REDMON and BETTY REDMON, husband and wife; ALICE REDMON, a widow; MICHAEL WOOD and KIMBERLY WOOD, husband and wife, individually, and guardians for their minor child, Bryce Wood; MARTIN E. SPRINKLE, a single man and LINDA SPRINKLE, a single woman; MARTIN L.J. SPRINKLE, a single man; AARON SPRINKLE, a single man; and STEPHEN P. REA, a single man; ANNA GAY GAROUTTE, a single woman; APRIL HURLEY, a single woman; and EDWARD THOMAS and MARTHA THOMAS, husband and wife | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 71430-9-I<br><br><br><br><br><br>UNPUBLISHED OPINION |
| Plaintiffs/Appellants,<br>v. | ) ) ) ) ) | |
| PORT BLAKELY TREE FARMS L.P. a Washington limited partnership; B & M LOGGING, INC., a Washington corporation; RAINIER TIMBER COMPANY, INC., an inactive Delaware corporation; RAINIER LOG COMPANY, | ) ) ) ) ) ) | FILED: June 30, 2014 |

INC., an inactive Delaware corporation;           )
RAINIER TIMBER COMPANY, LLC, a              )
company managed by THE CAMPBELL          )
GROUP, LLC that is not registered with          )
the Washington Secretary of State;              )
ISLAND TIMBER COMPANY,                      )
                                                                    )
                    Defendants.                            )
                                                                    )
THE CAMPBELL GROUP, LLC, a                )
Delaware corporation; MENASHA              )
FOREST PRODUCTS CORPORATION,          )
an inactive Delaware corporation;  a           )
Washington limited partnership;                )
DON ZEPP, d/b/a/ DON ZEPP LOGGING,     )
and POPE RESOURCES, a Delaware          )
Limited Partnership                                    )
                                                                    )
        Defendants/Respondents.   )
_____ )

SPEARMAN, C.J. — This appeal concerns a lawsuit filed by 14 families (Appellants) against Menasha Forest Products Corporation (Menasha)[1] and Don Zepp Logging (Zepp) (collectively "Respondents") after their properties in or near Glenoma, Washington were damaged by three landslides that occurred during a storm on January 7, 2009. The trial court dismissed the Appellants' claims for strict liability, trespass, and nuisance against Menasha and Zepp on summary judgment, as well as their negligence claims against Zepp. We affirm.

## FACTS

On January 7, 2009, a warm and unusually heavy rain storm (commonly known as a "Pineapple Express") occurred throughout Western Washington,

---

[1] At the time of the 2009 slide, the Martin Road logging unit was owned by Menasha Forest Products Corporation. The Campbell Group formed Campbell Menasha, LLC in 2007 to purchase Menasha Forest Products Corporation, and it subsequently managed the property on behalf of the LLC. The legal owner of the property is still Menasha Forest Products Corporation. The Appellants stipulated to dismissal of the Campbell Group prior to trial. Campbell Menasha, LLC and Menasha are hereinafter referred to as "Menasha."

aimed mainly at the Central Cascade Range. Over 1500 landslides in Western Washington were associated with the event. This lawsuit arises out of three such slides that occurred in Lewis County, in or near Glenoma, Washington: (1) the "Martin Road Slide," (2) the "Lunch Creek Slide," and (3) the "Rainey Creek Slide." Each Appellant owns property that was damaged by one of those landslides or a combination thereof. Menasha logged an area associated with the Martin Road Slide in 2001.[2] Zepp logged an area associated with the Lunch Creek Slide between January and April of 2006.[3]

The Appellants filed a complaint against a number of defendants, including Menasha and Zepp, on November 4, 2010 and an amended complaint on July 28, 2011, alleging causes of action for negligence, nuisance, trespass, and strict liability. On May 4, 2012, they moved for summary judgment on their strict liability claim. The trial court denied the motion and effectively dismissed the strict liability claim. Menasha then filed a motion for partial summary judgment to dismiss the plaintiffs' nuisance and trespass claims. Defendants Pope Resources, Port Blakely-Island Timber, and Zepp joined the motion. The trial court dismissed the Appellants' claims for nuisance and trespass. It later granted Zepp's separate motion for summary judgment on the negligence claim.

In February 2012, the trial court bifurcated for trial the negligence claims related to the Martin Road Slide from the claims related to the Lunch Creek and Rainey Creek slides. The 11 plaintiff families impacted only by the Martin Road

---

[2] More specifically, Menasha applied for the permits to log the land and hired defendant B&M Logging, Inc. to perform the cutting.

[3] The logging was done on land owned by Port Blakely Tree Farms, L.P. pursuant to a contract with Island Timber Company.

3

slide were scheduled to be in trial first against Menasha and B&M Logging, Inc. The second trial would have included the remaining plaintiffs and all defendants. B&M Logging settled prior to trial. The first trial against Menasha lasted six weeks. On December 14, 2012, the jury found that Menasha was not negligent and returned a verdict in Menasha's favor. Menasha then settled the claims made against it by the plaintiffs who were to be involved in the second trial. Defendants Port Blakely and Pope Resources also settled following the first trial with plaintiffs who had made claims against them. Because all of the claims to be heard in the second trial were either settled, or in the case of Zepp, dismissed on summary judgment the second trial was not necessary.

The Appellants appeal from the trial court's orders dismissing their claims for strict liability, nuisance, and trespass against Menasha and Zepp and their claims for negligence against Zepp. They do not appeal the verdict finding that Menasha was not negligent.

## DISCUSSION

This court reviews summary judgment de novo. Highline Sch. Dist. 401 v. Port of Seattle, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c). "The initial burden is on the moving party to show there is no genuine issue of material fact." American Exp. Centurion Bank v. Stratman, 172 Wn. App. 667, 673, 292 P.3d 128 (2012) (citing Vallindigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005)). If the moving party makes this showing, "the burden shifts to the nonmoving party to establish specific facts which demonstrate the existence

4

of a genuine issue for trial." <u>Kendall v. Douglas, Grant, Lincoln, and Okanogan Counties Public Hosp. Dist. No. 6.</u>, 118 Wn.2d 1, 8-9, 820 P.2d 497 (1991). "When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party." <u>Ranger Ins. Co. v. Pierce County</u>, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "[W]here reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment is appropriate." <u>Hiatt v. Walker Chevrolet Co.</u>, 120 Wn.2d 57, 66-67, 837 P.2d 618 (1992).

Strict Liability

Appellants argue that clearcutting steep, unstable slopes directly above residential properties is an abnormally dangerous activity subject to strict liability. Washington courts recognize the doctrine of strict liability as set forth in RESTATEMENT (SECOND) OF TORTS §§ 519 and 520 (1977). <u>Klein v. Pyrodyne Corp.</u>, 117 Wn.2d 1, 6, 810 P.2d 917 (1991). "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." RESTATEMENT (SECOND) OF TORTS § 519(1) (1977). Whether an activity is "'abnormally dangerous'" is a question of law. <u>Klein</u>, 117 Wn.2d at 6. We consider six factors in determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

RESTATEMENT (SECOND) OF TORTS § 520 (1977). Furthermore,

> [a]ny one of [the six factors] is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily. Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care.

Klein, 117 Wn.2d at 7 (quoting RESTATEMENT (SECOND) OF TORTS § 520, cmt. f (1977)).

No court in Washington or elsewhere has imposed strict liability for timber harvest activities. The only known case to consider the question is In re Flood Litigation, 216 W.Va. 534, 607 S.E.2d 863 (2004). There, the Supreme Court of Appeals of West Virginia, applying the six Restatement (Second) of Torts § 520 factors, summarily rejected plaintiffs' claim that extracting and removing coal and timber produced conditions that created an abnormally high risk of flash flooding for which defendants should be strictly liable for damages:

> This Court simply does not believe that the day to day activities of Defendants necessarily create a high risk of flash flooding. Also, we are convinced that any increased risk of flooding which results from Defendant's extractive activities can be greatly reduced by the exercise of due care. In addition, extractive activities such as coal mining and timbering are common activities in southern West Virginia. Finally, we are unable to conclude that the great economic value of some of these extractive activities is outweighed by their dangerous attributes.

216 W.Va. at 545, 607 S.E.2d at 874.

Here, Appellants argue that all six RESTATEMENT (SECOND) TORTS § 520 factors weigh in favor of strict liability. Defendants contend that all six factors weigh against strict liability.

6

*(a): Existence of a high degree of risk of some harm to the person, land or chattels of others.*

Appellants urge us to define the activity subject to strict liability as "clearcutting on steep, unstable slopes directly above a residential area." They contend that this narrowly defined activity carries a high risk of causing landslides and resulting harm. But cases applying the six RESTATEMENT (SECOND) TORT § 520 factors in Washington and other jurisdictions define the activity broadly [4] and then consider the nature of the locality where the activity is conducted in determining whether the risk of harm is high.[5] Thus, the operative question is whether logging carries a high degree of risk of harm from landslides given the characteristics of the area where it was conducted.

The parties dispute whether logging creates a risk of landslides in general and specifically whether it did so in this case. Appellants have presented evidence, that logging can increase the risk of landslides through loss of root strength, hydrological affects caused by removal of the tree canopy, and the inability of forestry scientists to accurately identify the riskiest areas for logging. In contrast, Respondents have presented evidence that landslides are endemic to the Glenoma area, that Appellants' homes are built on an "alluvial fan" consisting of the sediments derived from landslides and debris flows over many years, and that "landslides and debris flow have and will continue to occur [in the

---

[4] See Langan v. Valicopters, Inc., 88 Wn.2d 855, 567 P.2d 218 (1977) (crop dusting); Erickson Paving Co. v. Yardley Drilling Co., 7 Wn.App. 681, 502 P.2d 334 (1972) (blasting); Vern J. Oja & Assoc. v. Washington Park Towers, Inc., 89 Wn.2d 72, 569 P.2d 1141 (1977) (pile driving); Siegler v. Kuhlman, 81 Wn.2d 448, 502 P.2d 1181 (1972) (transporting gas as freight by truck); and Klein v. Pyrodyne Corp., 117 Wn.2d 1, 810 P.2d 917, op. amended, 817 P.2d 1359 (1991) (fireworks displays).

[5] See RESTATEMENT (SECOND) TORTS § 520 cmt. g.

7

Glenoma area] fairly frequently in geological time." CP at 966. The record also shows there were hundreds of landslides throughout Western Washington associated with the January 7, 2009 storm event that were apparently unrelated to logging because they occurred in areas of mature forest that had not been logged for many years.

However, even accepting appellants' contention that logging increases the risk that a landslide may occur, the extent of that risk is fairly debatable in light of other contributing factors. Moreover, to the extent logging increases the risk of landslides, the risk of harm from those landslides is lower when the activity is conducted in a rural area as compared to a densely populated area.[6] Given the totality of the circumstances, we conclude that any additional landslide risk caused by logging in a remote area does not favor imposing liability without the need for a finding of negligence.

*(b): Likelihood that the harm that results from it will be great*

"If the potential harm is sufficiently great, however, as in the case of a nuclear explosion, the likelihood that it will take place may be comparatively slight and yet the activity be regarded as abnormally dangerous. Others, such as the storage of explosives, necessarily involve major risks unless they are conducted in a remote place . . . ." RESTATEMENT (SECOND) TORTS § 520, cmt. g. Appellants argue that the magnitude of the harm resulting from landslides is necessarily severe. We agree that this is so in some instances. But the extent of the risk of harm from a particular activity cannot be divorced from the location in which the

---

[6] RESTATEMENT (SECOND) TORTS § 520 cmt. g and Reporter's Notes (compiling groups of cases from various jurisdictions and showing that strict liability for activities such as blasting, storage of inflammable liquids, oil and gas drilling, and water storage is often imposed in thickly-settled areas but not rural areas.

activity occurs. Generally, when logging occurs in rural, less populated areas, to the extent landslides result, there is less potential for great harm to occur. We conclude that this factor weighs against imposing liability without the need for a finding of negligence.

*(c): Inability to eliminate the risk by the exercise of reasonable care*

"Most ordinary activities can be made entirely safe by the taking of all reasonable precautions; and when safety cannot be attained by the exercise of due care there is reason to regard the danger as an abnormal one." RESTATEMENT (SECOND) TORTS § 520 cmt. h.

Appellants argue that it is not possible to eliminate or sufficiently reduce the increased risk of landslides caused by clearcutting on steep, unstable slopes. But as previously noted, the proper question is whether it is possible to eliminate or sufficiently reduce the risk of landslides caused by logging in rural areas. Respondents, citing Crosby v. Cox Aircraft Co. of Washington, 109 Wn.2d 581, 746 P.2d 1198 (1987), contend that logging risks can be sufficiently minimized by the exercise of due care. In Crosby, the Washington Supreme Court held that in light of extensive government regulation of aviation and continuing technological improvements in aircraft manufacture, maintenance, and operation, the overall risk of serious injury from ground damage resulting from a plane crash can be minimized by the exercise of due care. Crosby, 109 Wn.2d at 587-88. The Court also observed that because the causes of airplane accidents are legion and can come from a myriad of sources, "[a]ny listing of the causes of such accidents undoubtedly would fall short of the possibilities. In such circumstances the

imposition of liability should be upon the blameworthy party who can be shown to be at fault." Id.

Here, there is evidence in the record that even when exercising the highest degree of due care, logging in rural areas may increase the risk of landslides. Similar to the risk of spray drift when applying pesticides by helicopter[7] or the risk that a spectator will be injured by fireworks,[8] even when following regulations and exercising due care, it is not possible to eliminate the risk of harm caused by logging. Unlike the risk at issue in Crosby, regulatory and technological improvements in forestry have not appreciably reduced the increased risk of landslide that occurs when heavy rain falls on areas where logging has occurred.

But, as in Crosby, there is also evidence that many causes may contribute to the risk of landslides. The steepness of the slope, the presence of a "rain on snow" zone, the occurrence of an exceptional storm event, the effectiveness of applicable governmental logging regulations, and the extent to which those regulations are adhered to, together or individually, may cause a landslide. The record shows that the occurrence of landslides is seldom the work of one factor. As the Crosby Court noted, under these circumstances the imposition of strict liability is inappropriate and any liability should fall upon the party shown to be at fault. We conclude that this factor weighs against imposing liability without the need for a finding of negligence.

*(d): Extent to which the activity is not a matter of common usage*

---

[7] Langan, 88 Wn.2d at 864.

[8] Klein, 117 Wn.2d at 7.

"An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community." RESTATEMENT (SECOND) TORTS § 520 cmt. i. Certain activities, such as driving a car, are in such general use that they are not considered abnormally dangerous despite the unavoidable risk of serious harm. Id. Activities that are not a matter of common usage include "driving a tank, blasting, the manufacture, storage, transportation, and use of high explosives, and drilling for oil. The deciding characteristic is that few persons engage in these activities." Klein, 117 Wn.2d at 9.

Commercial logging requires specialized equipment, skills, and permits. Logging is a commercially significant industry in Washington. But people not employed in the industry do not customarily engage in this activity. Similarly, in Langan, the Court held that this factor weighed in favor of strict liability because even though crop dusting is prevalent in the Yakima area, few people engage in it. Langan, 88 Wn.2d at 864. This factor weighs in favor of imposing strict liability.

*(e): Inappropriateness of the activity to the place where it is carried out*

This factor takes into consideration the nature of the locality where the activity is taking place. For example, blasting operations or storage tanks filled with flammable liquids may create an abnormal danger if located in a city, but not in the midst of a remote desert. RESTATEMENT (SECOND) TORTS § 520 cmt. j.

Appellants argue that clearcutting on steep, unstable slopes is an inappropriate activity when performed directly uphill of a residential area. However, it is entirely appropriate to conduct commercial logging operations in a rural area, particularly one that had likely been logged at least twice during the past century. Moreover, Washington State forestry laws and regulations provide a detailed set

of forest practices rules that permit logging under a wide variety of conditions. See Forest Practices Act, chapter 76.09 RCW and Forest Practices Board, Title 222 WAC.[9] This detailed regulatory regime indicates that logging in Washington State, even on steep slopes, is an anticipated and routine use of the land. This factor weighs against imposing strict liability.

> *(f): Extent to which its value to the community is outweighed by its dangerous attributes*

"Even though the activity involves a serious risk of harm that cannot be eliminated with reasonable care and it is not a matter of common usage, its value to the community may be such that the danger will not be regarded as an abnormal one. This is true particularly when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it." RESTATEMENT (SECOND) TORTS § 520, cmt. k.

Appellants argue that any economic impact would be very small because only a small fraction of Washington timberland consists of steep, unstable slopes above residential communities. Respondents contend that the chilling effect on Washington's logging industry would be severe. But no evidence in support of the Respondents' contention appears in the record before us.[10] Accordingly, we conclude that this factor weighs in favor of imposing strict liability.

---

[9] Logging is even allowed in areas with "potentially unstable slopes and landforms," although additional analysis and precautions are required to carry out these Class IV forest practices. WAC 222-16-050(1)(d); WAC 222-10-030. The Department of Natural Resources classified and approved Respondents' logging proposal as Class III, which is less restrictive than Class IV.

[10] The Defendants rely primarily on appendices 3-6 to Menasha's response brief but these documents were not before the trial court and we do not consider them. RAP 9.12; Washington Fed'n of State Employees v. Office of Fin. Management, 121 Wn.2d 152, 156-57, 849 P.2d 1201 (1993). "[W]e 'will consider only evidence and issues called to the attention of the trial court.'")

In sum, four out of six section 520 factors weigh against imposing strict liability for logging. Strict liability is appropriate where the "dangers and inappropriateness for the locality are so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence." RESTATEMENT (SECOND) TORTS § 520, cmt. f. The remaining two factors do not weigh heavily enough to overcome our conclusion that logging is not an activity subject to strict liability. We therefore hold that the trial court did not err in dismissing Appellants' strict liability claim.[11]

Nuisance

Plaintiffs argue that the trial court erred in dismissing their nuisance claim as duplicative of their negligence claim.

A nuisance is "an unreasonable interference with another's use and enjoyment of property. . . ." Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 592, 964 P.2d 1173 (1998). Nuisance "consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency ... or in any way renders other persons insecure in life, or in the use of property." RCW 7.48.120.

Nuisance can be based upon intentional, reckless, or negligent conduct. Hostetler v. Ward, 41 Wn. App. 343, 357, 704 P.2d 1193 (1985). "[I]t is, of course, possible for the same act to constitute negligence and also give rise to a nuisance." Peterson v. King County, 45 Wn.2d 860, 863, 278 P.2d 774 (1954) (citing Kilbourn

---

[11] Respondents further argue that imposing strict liability is improper because Appellants have no evidence that Respondents' logging activities caused the landslides. We disagree that Appellants failed to raise an issue of material fact on this question. However, because we hold that logging is not an activity subject to strict liability, causation is not at issue.

13

v. City of Seattle, 43 Wn.2d 373, 382, 261 P.2d 407 (1953)). However, "[s]eparate legal theories based upon one set of facts constitute 'one claim' for relief under CR 54(b)." Snyder v. State, 19 Wn. App. 631, 635, 577 P.2d 160 (1978). "A single claim for relief, on one set of facts, is not converted into multiple claims, by the assertion of various legal theories." Pepper v. J.J. Welcome Const. Co., 73 Wn. App. 523, 546, 871 P.2d 601 (1994) overruled on other grounds by Phillips v. King County, 87 Wn. App. 468, 943 P.2d 306 (1997). Thus, "'a negligence claim presented in the garb of nuisance' need not be considered apart from the negligence claim." Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co., 115 Wn.2d 506, 527, 799 P.2d 250 (1990) (quoting Hostetler, 41 Wn. App. at 360.). "In those situations where the alleged nuisance is the result of defendant's alleged negligent conduct, rules of negligence are applied." Atherton, 115 Wn.2d at 527.[12]

Appellants argue that they asserted a nuisance claim independent of their negligence claim because the nuisance was the result of Respondents' intentional act of cutting down trees. Appellants misinterpret the meaning of "intentional act" in this context. "[N]uisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another."

---

[12] See also Lewis v. Krussel, 101 Wn. App. 178, 183, 2 P.3d 486 (2000) ("Lewis and Teitzel ground their nuisance claim on the Krussels' inaction with regard to the fallen trees. In other words, the nuisance is the result of negligence. . . . Accordingly, we do not consider the nuisance claim apart from the negligence claim."); Kaech v. Lewis County Public Utility Dist. No. 1, 106 Wn.App. 260, 282, 23 P.3d 529 (2001) (Plaintiff "alleged that stray voltage escaped from faulty insulators and damaged his dairy herd. Thus, the same set of facts supports claims of negligence, nuisance, and trespass."); Sourakli v. Kyriakos, Inc., 144 Wn. App. 501, 515, 182 P.3d 985 (2008) ("Because Sourakli's nuisance theory against Titan and Diamond rests on the same facts as his negligence theory against those defendants, it does not provide an alternative basis to proceed against them in a suit for damages.").

Hostetler, 41 Wn. App. at 359. In contrast, tortious intent is found where "the actor desires to cause the consequences of his act, or ... believes that the consequences are substantially certain to result from it." RESTATEMENT (SECOND) TORTS § 8A (1965); Bradley, 104 Wn.2d at 682.

Appellants' second amended complaint alleged that "[t]he manner in which Defendants clearcut and built roads on the slopes above the plaintiffs' residences constituted a nuisance to the plaintiffs" and proximately caused their properties to be inundated by landslides and debris flows. CP at 25. Appellants asserted that "the flooding was caused by a series of unintended debris jams formed by logging debris and other materials that accumulated water and then violently exploded into flash floods" and that "defendants failed to use due care in managing their properties and conducting their logging and related activities." CP at 6 (emphasis added).

"A party's characterization of the theory of recovery is not binding on the court. It is the nature of the claim that controls." Pepper, 73 Wn. App. at 546. Nowhere in the second amended complaint did appellants allege that Respondents' logging activities were unlawful or that Respondents intended to cause harm. Rather, the nuisance claim was grounded in the same facts and allegations as the negligence claim. The trial court did not err in dismissing the nuisance claim as duplicative.

### Trespass

Appellants argue that the trial court erred in dismissing their trespass claim as duplicative of their negligence claim.

"Trespass occurs when a person intentionally or negligently intrudes onto or into the property of another." Jackass Mt. Ranch, Inc. v. South Columbia Basin Irr. Dist., 175 Wn. App. 374, 401, 305 P.3d 1108 (2013) (citing Borden v. City of Olympia, 113 Wn. App. 359, 373, 53 P.3d 1020 (2002)). "'Negligent trespass' requires proof of negligence (duty, breach, injury, and proximate cause)." Pruitt v. Douglas County, 116 Wn. App. 547, 554, 66 P.3d 1111 (2003) (quoting Gaines v. Pierce County, 66 Wn. App. 715, 719-20, 834 P.2d 631 (1992)). "To establish intentional trespass, a plaintiff must show (1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages." Wallace v. Lewis County, 134 Wn. App. 1, 15, 137 P.3d 101 (2006) (citing Bradley, 104 Wn.2d at 692-93).

Here, Appellants' second amended complaint alleged in part that "Defendants' negligent logging activities precipitated the physical invasion of plaintiffs' properties by landslides, logging debris, boulders, mud, rocks, gravel, and water." CP at 25. The claim was grounded in negligence. As with nuisance, "[w]e treat claims for trespass and negligence arising from a single set of facts as a single negligence claim." Pruitt, 116 Wn. App. at 554 (citing Pepper, 73 Wn. App. at 546-47.

As with the nuisance claim, Appellants argue that they satisfied the requirements for intentional trespass based on Respondents' intentional act of

16

cutting down trees. We disagree. The "intent element of trespass can be shown where the actor 'knows that the consequences are certain, or substantially certain, to result from his act." <u>Price ex rel. Estate of Price v. City of Seattle</u>, 106 Wn. App. 647, 660, 24 P.3d 1098 (2001) (citing <u>Bradley</u>, 104 Wn.2d at 691). Even viewed in the light most favorable to Appellants, the nonmoving party, there is no evidence in the record that Respondents knew or were substantially certain that their logging activities would result in a landslide. The trial court did not err in dismissing the trespass claim as duplicative of the negligence claim.[13]

Negligence – Zepp

The Plaintiffs argue that the trial court erred in dismissing their negligence claim against Zepp on summary judgment. They assert that Zepp's compliance with laws, permits, industry standards, and the terms of his contract does not shield him from liability for negligence as a matter of law.

To prove negligence, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach is a proximate cause of the injury. <u>Crowe v. Gaston</u>, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998). The existence of a duty is a question of law. <u>Suter v. Virgil R. Lee & Son, Inc.</u>, 51 Wn. App. 524, 528, 754 P.2d 155 (1988).

---

[13] Appellants further argue that in the absence of intention, Respondents trespassed by failing to remove landslide debris from their properties. "One is subject to liability to another for trespass... if he intentionally...fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) Torts § 158. Appellants, however, do not dispute Menasha's assertion that they did not advance this argument to the trial court. "Generally, failure to raise an issue before the trial court precludes a party from raising it on appeal." <u>Lunsford v. Saberhagen Holdings, Inc.</u>, 139 Wn. App. 334, 338, 160 P.3d 1089 (2007) (citing <u>Smith v. Shannon</u>, 100 Wn.2d 26, 37, 666 P.2d 351 (1983)).

Zepp points out that he is a logger, not a geomorphologist or hydrologist. He contends that he did not have a duty to take additional steps to ensure that logging the land was reasonable because he lacks the expertise (and is not, as a logger, expected to have the expertise) to know whether logging the land would have caused landslides. Rather, it was reasonable for him to log in accordance with a forest practices application that was reviewed and approved by experts at the Department of Natural Resources. We agree.

Initially, appellants are correct that compliance with applicable regulations, industry customs, permits, and contracts does not per se excuse a defendant from a claim of negligence and entitle the defendant to summary judgment as a matter of law.[14] But in cases holding that the defendant's duty of care required more, the defendant possessed the specialized knowledge, skills, and expertise to assess the situation and take reasonable additional action.[15] Here, the Appellants did not put forth evidence indicating that Zepp breached the duty of care owned by a reasonable logger.[16] We cannot conclude as a matter of law that Zepp had a duty

---

[14] See RESTATEMENT (SECOND) TORTS § 288C ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions."); Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 553, 192 P.3d 886 (2008) ("[A] simple statement indicating an individual acted according to the customs of the industry is not always determinative."); Helling v. Carey, 83 Wn.2d 514, 519, 519 P.2d 981 (1974).

[15] See Helling, 83 Wn.2d at 519 (reasonable prudence required ophthalmologist to give glaucoma test to 32-year-old plaintiff, notwithstanding standard practice of routinely testing for glaucoma after age 40, where testimony indicated that standards of profession required test if patient's symptoms revealed suspicion of glaucoma and where glaucoma test was simple and harmless); Ranger, 164 Wn.2d at 544 (jury could find that reasonably prudent court clerk had a duty to verify that a bond was underwritten by a surety before allocating surety's funds to forfeited bond, where county had written notice of which bonds were underwritten).

[16] At summary judgment, the Plaintiffs presented the declaration of Mike Jackson, a certified forester, who opined that "a prudent logger would have recognized he was taking a significant risk if he logged the unit [at issue] to the specified boundary." CP at 1410. But the trial court granted Zepp's motion to strike Jackson's declaration; thus, it was not considered.

to take additional steps to know and ensure that logging the land was reasonable given its geological and hydrological features. Because there was no material question of fact for a jury to decide, the trial court properly dismissed Appellants' negligence claim against Zepp.

Pursuant to RAP 14.2 and RAP 18.1(b), Menasha requests an award of reasonable attorney's fees, costs, and expenses on appeal as allowed under RAP 14.3. RAP 14.2 provides for an award of costs to the party that substantially prevails on review, and RAP 14.3 defines which types of expenses are allowed as costs. RAP 18.1(b) requires "more than a bald request for attorney fees." Richards v. City of Pullman, 134 Wn. App. 876, 884, 142 P.3d 1121 (2006). Menasha makes no argument as to why attorney fees under RAP 18.1 are proper. Therefore, Menasha is entitled only to an award of allowable costs and expenses under RAP 14.2 and 14.3.

Affirmed.

_Spelman, C.J._

WE CONCUR:

_Leach, J._

_Green, J.P.T._

19