# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WENDY ANN MURRAY as PERSONAL REPRESENTATIVE OF THE ESTATE OF CARL MURRAY, a deceased career professional firefighter for and on behalf of the Estate and RCW 4.20.020 beneficiaries,<br><br>Appellant,<br><br>v.<br><br>CITY OF VANCOUVER, a municipal subdivision of the State of Washington,<br><br>Respondent. | No. 49899-5-II<br><br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Wendy Murray, as the personal representative of Carl Murray's estate (Estate), appeals the superior court's order dismissing the Estate's tort claims against the City of Vancouver.[1] The Estate claimed that Carl's death was the result of radon exposure during his career as a firefighter for the City. The superior court granted partial summary judgment in favor of the City and (1) dismissed the Estate's survival claims as barred by the statute of limitations; (2) dismissed the Estate's strict liability and loss of consortium claims as barred by the Law Enforcement Officers and Fire Fighter's Retirement System Act (LEOFF), chapter 41.26 RCW; (3) dismissed the Estate's outrage claim; and (4) limited damages on the Estate's wrongful death

---

[1] For clarity, we refer to the Estate as the plaintiff/appellant in this action, and we refer to Wendy and Carl individually by their first names. We intend no disrespect.

1

claim to amounts exceeding the amount received or receivable under LEOFF.[2] We affirm, in part, the superior court's order granting partial summary judgment and dismissing the survival, strict liability, and outrage claims. However, we hold the trial court erred in dismissing the loss of consortium claim, and we decline to review the court's ruling limiting damages on the wrongful death claim.

FACTS

Carl was a fire fighter with the City for over 20 years. Carl was diagnosed with lung cancer on December 22, 2010. On July 30, 2013, Carl died from metastatic lung cancer.

On February 2, 2016, the Estate filed a complaint for damages against the City alleging that Carl's cancer was caused by exposure to radon while working in the City's fire stations. The complaint alleged a wrongful death action under RCW 4.20.010 and survival actions under RCW 4.20.046. The complaint also alleged strict liability and outrage. And the complaint alleged damages for loss of consortium.

The City filed a motion for partial summary judgment seeking dismissal of the survival claims for strict liability, loss of consortium, outrage, and for limitations on the damages sought for the wrongful death claim. The City argued that the Estate's survival claims were barred by the statute of limitations. The City also argued that the Estate's strict liability and loss of consortium claims were abolished by LEOFF. And the City argued that the Estate's outrage claim should be

_____

[2] The Estate also argues that the City "rush[ed] to summary judgment, before the discovery was completed, before the discovery was reviewed by Plaintiff's counsel and before the discovery could be provided to experts . . . ." Br. of Appellant at 27. Because the Estate did not seek to continue the hearing under CR 56(f), we do not address the Estate's arguments regarding discovery related to the partial summary judgment motion.

dismissed as a matter of law. Finally, the City argued that LEOFF required that any damages that may be awarded based on Murray's wrongful death claim must be limited to "excess damages over the amount received or receivable" under LEOFF. Clerk's Papers (CP) at 68.

In support of its partial summary judgment motion, the City submitted several emails Carl wrote or received while working for the City as a fire fighter. One email Carl received in January 2009 was an announcement about "Radon Action Month" including facts linking radon to causing cancer. CP at 27. On January 5, 2011, after Carl was diagnosed with cancer, he received an email from Vancouver Fire Department (VFD) Division Chief Roxy Barnes:

> I have been doing some research and believe it would be very helpful to you [C]arl to identify how many shifts you worked at station 1 or 2 since radon is one major cause of several types of lung cancer.

CP at 36. On January 8, Barnes sent Carl another email that read,

> Big hug to you Carl. I am there with you whenever you need t[he] help of a nurse. I do need to know types of cancer so I can connect it to your radon exposure for presumption. Do you remember when I had everyone fill out the paperwork for radon exposure? Do you remember filling it out? I plan on writing a supportive paper to nail your presumption connection for the city. Joe went through that process so we can help you there. Big hug to you[.]

CP at 38. Carl responded to Barnes's email and stated that he remembered filling out the paperwork. The City also provided a copy of a Hazards Material Exposure Report that Carl filled out in 2001, which documented Carl's exposure to radon in fire stations 82 and 86.

In response to the City's partial summary judgment motion, the Estate filed hundreds of pages of documents related to the history of radon testing and mitigation in the City's fire stations. On behalf of the Estate, Wendy provided a declaration in which she stated that Carl believed his cancer was caused by chemical exposure responding to fires and neither she nor Carl knew that

radon exposure may have caused his cancer. Wendy also stated that she did not know the extent

of the radon exposure until she received the October 2013 response to her public records request

seeking the City's records related to radon testing at the City's fire stations.

The superior court granted the City's motion for partial summary judgment. In its order

granting partial summary judgment, the superior court dismissed the Estate's survival, strict

liability, loss of consortium, and outrage claims with prejudice. The superior court also ruled that

the "[City's] Motion for Partial Summary Judgment limits Plaintiff's damages to the total damages

reduced by amounts paid by [the City] under LEOFF, reduced further by the present value of the

amounts payable by LEOFF." CP at 82-83.

The Estate filed a notice for discretionary review of the superior court's partial summary

judgment order with this court. A commissioner of this court denied the Estate's motion for

discretionary review. Then, the Estate stipulated to an order dismissing its wrongful death claim

subject to reinstatement if we reverse the superior court's partial summary judgment order. The

Estate appeals both the stipulated order and the superior court's partial summary judgment order.

ANALYSIS

I. STANDARDS OF REVIEW

We review a superior court's summary judgment order de novo, performing the same

inquiry as the superior court and viewing all facts and reasonable inferences in the light most

favorable to the nonmoving party. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164,

273 P.3d 965 (2012). Summary judgment is appropriate where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006). To establish a genuine issue of material fact, the nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain; instead, it must set forth specific facts that sufficiently rebut the moving party's contentions. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 601-02, 200 P.3d 695 (2009).

We review questions of statutory interpretation de novo. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). When interpreting a statute, we first look to the statute's plain meaning. *Lake*, 169 Wn.2d at 526. We discern the statute's plain meaning by looking at the ordinary meaning of the language at issue, the context of the statute, and the statutory scheme as a whole. *Lake*, 169 Wn.2d at 526. "If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end." *Lake*, 169 Wn.2d at 526.

## II. SURVIVAL CLAIMS

The Estate argues that the statute of limitations does not bar its survival claims, contending that the "statute of limitations does not run in Washington until the Plaintiff knows of the cause of his occupational disease."[3] Br. of App. at 32. Based on this unsupported statement of the law, the Estate argues that the statute of limitations did not begin running because there "was never

---

[3] The Estate also addresses the wrongful death claim in the section of its brief addressing the statute of limitations. However, the superior court did not grant summary judgment on the wrongful death claim. Rather, the Estate stipulated to dismissal of the wrongful death claim to obtain appellate review of the superior court's order granting partial summary judgment. Because the wrongful death claim was not decided as part of the superior court's partial summary judgment order and the Estate stipulated to its dismissal, we do not address whether the statute of limitations bars the Estate's wrongful death claim.

adequate notice of the ongoing lethal radon exposures, failed mitigation, and the strongest relationship between radon and lung cancer to start the statute of limitations." Br. of Appellant at 33. However, under the well-established discovery rule, the statute of limitations on the survival claims started when Carl, who would have been the plaintiff for purposes of the survival claims, *should have known* that the radon exposure caused his cancer. The City established that this date was in January 2011. Therefore, the superior court properly granted the City's motion for partial summary judgment on the survival claims.

Survival actions are created by RCW 4.20.046 and 4.20.060. "Unlike Washington's wrongful death statutes, the survival statutes do not create new causes of action for statutorily named beneficiaries but instead preserve causes of action for injuries suffered prior to death." *Est. of Otani v. Broudy*, 151 Wn.2d 750, 755, 92 P.3d 192 (2004). Under RCW 4.16.080(2), the relevant statute of limitation for survival actions is three years. The discovery rule applies to survival and wrongful death actions:

> The [discovery] rule delays accrual of the cause of action only until the claimant knew *or reasonably should have known* of the facts necessary to establish the cause of action. It does not delay accrual until the claimant knows that she has a legal cause of action, and the claimant must exercise reasonable diligence in pursuing a legal claim.

*Allen v. State*, 60 Wn. App. 273, 275, 803 P.2d 54 (1991) (emphasis added).

Here, the City presented undisputed evidence that Carl received and responded to emails that specifically identified a link between his exposure to radon at the fire stations and his lung cancer when he was first diagnosed in December 2010. The City presented two emails from January 2011 in which VFD Division Chief Barnes referred to proving a connection between Carl's exposure to radon in the City's fire stations and his lung cancer.

The record does not contain evidence that Carl exercised due diligence at that time. Had he done so, he could have obtained all the information regarding radon testing and mitigation efforts that Wendy later received when the City responded to her public records request. Therefore, Carl reasonably should have known of the facts necessary to establish all of the essential elements of his claims against the City in January 2011. Based on this date, the three year statute of limitations for personal injury claims would have expired in January 2014. The Estate did not file the current cause of action until February 2016, more than two years after the statute of limitations had expired. Accordingly, the superior court properly granted partial summary judgment on the survival claims based on the statute of limitations.

### III. STRICT LIABILITY AND LOSS OF CONSORTIUM CLAIMS

The City argued that partial summary judgment was proper as to the Estate's strict liability and loss of consortium claims because the legislature abolished these causes of action under LEOFF. The superior court agreed and granted the City's motion for partial summary judgment on these grounds. The superior court properly dismissed the Estate's strict liability claim. Although the superior court improperly treated the loss of consortium claim separately rather than as an element of damages, for the reasons explained below we affirm the superior court's partial summary judgment order and dismissal of the strict liability claim but we hold that the trial court erred in dismissing as a separate clam the loss of consortium claim.

LEOFF explicitly abolishes "all civil actions and civil causes of actions by such law enforcement officers and firefighters against their governmental employers" except as otherwise provided by LEOFF. RCW 41.26.270. Additionally, RCW 41.26.281 states,

> If injury or death results to a member from the intentional or negligent act or omission of a member's governmental employer, the member, the widow, widower, child, or dependent of the member shall have the privilege to benefit under this chapter and also have cause of action against the governmental employer as otherwise provided by law, for any excess of damages over the amount received or receivable under this chapter.

The City argues that the claims for strict liability and loss of consortium are separate causes of action that have been abolished by RCW 41.26.270.

## A. STRICT LIABILITY

The plain language of RCW 41.26.281 specifically limits the City's liability for intentional or negligent acts. The Estate pleaded a strict liability claim based on the assertion that the City engaged in abnormally dangerous activities. Washington courts have adopted the theory of strict liability for abnormally dangerous activities as set forth in the *Restatement (Second) of Torts*. *Hurley v. Port Blakely Tree Farms L.P.*, 182 Wn. App. 753, 761, 332 P.3d 469 (2014). "'One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent harm.'" *Hurley*, 182 Wn. App. at 761 (quoting RESTATEMENT (SECOND) OF TORTS § 519(1) (AM. LAW INST. 1977)). Therefore, strict liability allows for liability regardless of the defendant's intent or negligence in carrying out the abnormally dangerous activity.

Because a claim for strict liability permits liability for acts that are neither intentional nor negligent, a claim for strict liability is outside the scope of RCW 41.26.281. Therefore, the legislature has abolished claims for strict liability by firefighters against their government under RCW 41.26.270. Thus, the superior court did not err by granting the City's motion for partial summary judgment on the Estate's strict liability claim.

B. LOSS OF CONSORTIUM

The City also argues that RCW 41.26.270 abolished Murray's loss of consortium claim. The superior court erroneously treated loss of consortium as a separate cause of action, rather than as an element of damages for the Estate's wrongful death claim. Although, as explained below, we decline to review the stipulated order dismissing the wrongful death claim, we address this discrete issue for purposes of judicial economy.

"Loss of consortium is not, in and of itself, a cause of action but rather an element of damages." *Long v. Dugan*, 57 Wn. App. 309, 313, 788 P.2d 1 (1990). The wrongful death statute, RCW 4.20.020, governs "post[-]death loss of consortium as well as other aspects of post[-]death damages" for the benefit of the surviving spouse. *Hatch v. Tacoma Police Dept.*, 107 Wn. App. 586, 588-89, 27 P.3d 1223 (2001). Here, loss of consortium was not a separate claim, but rather an element of damages for the Estate's wrongful death claim. Therefore, the superior court erred by ruling that the Estate's claim for damages resulting from loss of consortium should be dismissed as a separate cause of action under RCW 41.26.270. For that reason, we reverse the superior court's partial summary judgment order to the extent of that ruling.

## IV. OUTRAGE

The Estate also argues that the superior court erred by dismissing the outrage claim against the City. We disagree.

To establish the tort of outrage, or intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress as a result. *Reid v. Pierce County*, 136 Wn.2d 195, 202, 961 P.2d 333 (1998). To prove extreme and outrageous conduct, it is not enough to show that the

defendant acted with tortious or criminal intent, intended to inflict emotional distress, or even acted with malice. *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975). The conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grimsby*, 85 Wn.2d at 59 (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 46 CMT. D (1965)). The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but the court must initially determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989).

The City argues that summary judgment was appropriate because the Estate failed to establish that the City engaged in extreme and outrageous conduct. Here, the Estate submitted hundreds of pages of documents in response to the City's partial summary judgment motion showing that the City regularly engaged in radon testing and engaged in mitigation efforts to reduce high levels of radon. Whether, and to what extent, the City was successful and, more importantly, whether the City's conduct was negligent is not at issue here. Instead, we need only decide whether reasonable minds could differ on whether the City's conduct is atrocious and utterly intolerable in a civilized community. The City's conduct was not extreme and outrageous because the City conducted regular radon testing and attempted mitigation when high levels of radon were identified at the City's fire stations.

Similarly, the City's alleged failure to warn firefighters of the elevated levels of radon is not sufficiently outrageous to support an outrage claim. Here, although the City may not have actively disclosed the elevated levels of radon, it was performing regular radon testing and making

mitigation efforts. The City did not affirmatively mislead firefighters or try to conceal the radon. For example, the City did not alter test results or refuse to disclose information regarding the radon testing. Therefore, reasonable minds would not differ in concluding that the City's failure to warn fire fighters of the elevated levels of radon was beyond all possible bounds of decency or utterly intolerable in a civilized community.

Because the Estate has failed to establish a genuine issue of material fact as to whether the City's conduct was extreme and outrageous, the superior court's order granting partial summary judgment and dismissal of the Estate's outrage claim was proper.

## V. DAMAGES—WRONGFUL DEATH CLAIM

Finally, the Estate argues that the superior court erred by granting the City's motion for partial summary judgment limiting damages for the Estate's wrongful death claim under LEOFF. However, the superior court's ruling limiting damages is not properly before this court because the final judgment prejudiced by the ruling is not appealable. Accordingly, we do not address the Estate's argument regarding the limitation of damages under LEOFF.

RAP 2.2(a) provides, in relevant part, that a party may only appeal from either a final judgment or an order determining the action. A "final judgment" is the "final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs." RAP 2.2(a)(1). And an order determining the action is defined as any "written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." RAP 2.2(a)(3). The order or orders being appealed should be designated in the notice of appeal. RAP 2.4(a).

11

The Estate designated both the order granting the City's motion for partial summary judgment and the stipulated order dismissing the wrongful death claim in its notice of appeal. However, neither order provides an avenue for our review of the superior court's ruling limiting damages on the wrongful death claim.

The order granting partial summary judgment is not a final judgment or an order determining the action in regard to the damages ruling because the damages ruling related to the wrongful death claim, which survived partial summary judgment. Therefore, the superior court's ruling limiting damages on the wrongful death claim would be reviewed under the final judgment or order determining the action on the wrongful death claim.

However, in this case, the order determining the action on the wrongful death claim—the stipulated order dismissing the wrongful death claim—is not reviewable because the Estate stipulated to its entry and effect. *Fite v. Lee*, 11 Wn. App. 21, 25-26, 521 P.2d 964 (1974) ("The order of dismissal thereafter entered was in the nature of a judgment by consent, which, in the absence of fraud or mistake or want of jurisdiction, will not be reviewed on appeal."). Moreover, the Estate stipulated to an order dismissing its wrongful death claim subject to reinstatement if we reverse the superior court's partial summary judgment order, and we decline to do so here. Because we will not review the stipulated order dismissing the wrongful death claim, there is no final judgment or order determining the action that pertains to the superior court's ruling limiting damages on the wrongful death claim. Accordingly, we do not review the superior court's ruling limiting damages on the wrongful death claim.

No. 49899-5-II

CONCLUSION

We affirm the superior court's order granting partial summary judgment and dismissing the survival, strict liability, and outrage claims. However, we hold that the trial court erred in dismissing the loss of consortium claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.

13